ANDREW COMPTON, Appellee, *vs.* SQUIRE E. JOHNSON *et al.*
Appellants.

*Opinion filed June 16, 1909.*

1. REAL PROPERTY—*when purchaser takes subject to existing infirmities of grantor's title.* One who takes a quit-claim deed from a person who he knows is holding by a tax title, takes only such title as the grantor had and subject to its existing infirmities.

2. LACHES—*mere delay for less than period covered by the Statute of Limitations is no defense.* Delay for less than the statutory period of limitation in asserting rights in land will not bar the owner's rights unless the delay is accompanied by some other element which renders it inequitable to permit such assertion of title.

3. SAME—*passive acquiescence may not bar rights.* The fact that the owner of land passively acquiesces for less than seven years in transactions involving the title and possession of the land does not bar the assertion of his rights, where he did no affirmative act to lead the parties interested, who were familiar with the facts, to believe he was not the owner of the land, or which would equitably estop him, as against such parties, to assert his rights.

APPEAL from the Circuit Court of Lee county; the Hon. OSCAR E. HEARD, Judge, presiding.

J. W. WATTS, and BROOKS & BROOKS, for appellants.

JOHN W. BEEMER, and WILLIAM H. WINN, for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

On June 28, 1907, Andrew Compton, appellee, filed his bill in the circuit court of Lee county against Squire E. Johnson and Minor M. Avery, appellants, seeking to compel them to execute to him a deed to an eighty-acre tract of land in that county, to have certain deeds canceled and set aside as clouds upon the title to that land, and for an accounting. Upon a hearing on the report of the master to whom the cause was referred a decree was entered granting substantially the relief prayed for by the bill, and to review that decree this appeal is prosecuted.

It appears from the record that on June 17, 1899, Andrew Compton was the owner of the land here in controversy and certain other lands, amounting in all to two hundred acres, located in township 37, north, range 1, east of the third principal meridian, in Lee county, Illinois; that he on that day obtained from the appellants the sum of $4763.63, with which he redeemed the said lands from a sale made by the master in chancery of the said court on June 17, 1898, under a decree of foreclosure. At the same time Compton, in order to secure the payment of the money so obtained, executed a deed conveying all of the above mentioned lands to Johnson and Avery. On July 5, 1899, Compton, in the said circuit court, filed his bill against Johnson and Avery to redeem. For the purpose of settling that suit Johnson and Avery, in December, 1899, executed to Compton a warranty deed for the eighty-acre tract involved in this suit and delivered the deed to Compton's solicitor. Thereafter, during the year 1900, Compton's solicitor withdrew his appearance in the suit, and thereupon the bill was dismissed at complainant's cost. Compton has never had manual possession of that deed but has refused to accept the same. Johnson and Avery contend the deed of 1899 was executed and delivered pursuant to an agreement by which Compton was to have the eighty acres covered by that deed and they were to have the remainder of the two hundred acres. Compton denies that any settlement of the controversy ever was made. Whether, in fact, the difficulties between the parties were adjusted at or prior to the time of the execution of that deed is not now material in this case. That deed from Johnson and Avery to Compton has never been recorded and at the time of the trial of this suit it could not be found.

On June 15, 1898, this tract of land had been sold for taxes. The certificate was later sold and assigned to Harry L. Fordham, and on June 14, 1900, he obtained a tax deed based on that certificate. The parties hereto agree that this

tax deed was void by reason of irregularities in the proceedings which led to its execution.

Fordham was engaged in the banking business in the village near which this land was located. Compton frequently deposited money with him and he acted as Compton's agent. From a time anterior to the execution of the tax deed Fordham has constantly had in his hands more money belonging to Compton than would have been sufficient to redeem the land from the tax sale. On June 9, 1900, prior to the expiration of the time of redemption but after the service of the notice of the expiration of that time, Compton went to Fordham, who then owned the certificate, and tendered him the money necessary to redeem from the tax sale. Fordham declined to take it, saying it was unnecessary to pay it as he then had in his hands more money belonging to Compton than was necessary to effect the redemption. Later, when Compton learned that Fordham had secured the tax deed, he again went to him and tendered him the money to redeem. Fordham again refused to take it, making substantially the statement that he had made at the time of the first tender. In the fall of 1899 one Swope leased the greater part of this land from Compton for a term beginning March 1, 1900, and expiring one year later. Fordham drew the lease. After it was signed it was left with him at the bank. Compton told Swope to pay the rent, when it was due, to Fordham; that Fordham was transacting his (Compton's) business. Swope has continued to farm all the land covered by that lease from that time down to the time of the trial of this case. The first lease covered but seventy acres of the land, but within a year or two he obtained a lease which covered all the land, and from that time he occupied the entire eighty acres. While Swope had but seventy acres leased, the remaining ten acres was occupied by Compton or rented by Fordham to a man named Lloyd. After Fordham obtained the tax deed Swope attorned to him but without any notice being given

to Compton. It is apparent that Compton did not realize that Fordham intended to assert any right adverse to him until after Fordham conveyed the land, by quit-claim deed, to appellants, Johnson and Avery, on February 13, 1904. While he knew that Fordham was collecting rents, making repairs, paying taxes, etc., he seems to have been under the impression that these things were being done for his account. The deed from Fordham to Johnson and Avery was made for an expressed consideration of $5000. It was made, however, in a trade between Fordham on the one side and Johnson and Avery on the other, and it is doubtful, under the proof in this case, whether Fordham actually received any valuable consideration for the conveyance.

The decree finds that the eighty-acre tract was worth $12,000 when Fordham acquired the tax certificate. It has not been worth any less since that time. The evidence shows, and the decree finds, that Fordham ignored his duty as agent and banker for the complainant; that Fordham never gave to him any receipt or other evidence of the receipt of money which he received from time to time for the account of Compton, and that the latter had no means of ascertaining the condition of his account with Fordham after the latter acquired the tax certificate, and that Fordham on one occasion paid out $175 of complainant's money without any authority and without reporting the transaction to him.

After Fordham conveyed the land to Johnson and Avery he collected one year's rent which he had reserved, and after that time Johnson and Avery collected the rent. While Fordham claimed to be holding under the tax title he made trifling improvements and repairs, such as were necessary to keep the farm in running order, and paid the taxes. Johnson and Avery did the same thing after he quit-claimed to them. These disbursements on account of the land were much less each year than the rent collected.

Soon after Johnson and Avery obtained the quit-claim deed Compton learned that Swope was paying rent to them, but made no objection until shortly before he began this suit. During all of the time of the transactions above recited Compton lived within eighty rods of the land, knew who was in actual possession thereof and was cognizant of all that was done with reference to farming the same. He seems to have been a man who was at all times heedless and indifferent in reference to the transaction of his business. He reposed implicit confidence in Fordham, whom he had known for many years.

Seven years did not intervene between the execution of the tax deed and the beginning of this suit, but appellants contend that Compton "is barred by *laches* and acquiescence from asserting any right or title to the lands in question as against appellants." The latter knew that Fordham held by tax title and by his quit-claim they took only such title as he had, subject to its existing infirmities. (*Gonzalia* v. *Bartelsman,* 143 Ill. 634.) Appellee did no affirmative act to lead the appellants to believe that he was not the owner of this land. It is true that acquiescence by the owner in a transaction in which his real estate is conveyed for a valuable consideration by another may bar the owner from asserting his title in equity, irrespective of the passage of time, but to have that effect the acquiescence must be of a character which would give rise to an estoppel. (*Carpenter* v. *Carpenter,* 70 Ill. 457.) No such conduct of appellee is here shown. The most that can be said is that he delayed the assertion of his rights. Mere delay, alone, for a period less than that covered by the Statute of Limitations is not *laches* that constitutes a defense. It is only when the delay is accompanied by some other element rendering it inequitable to permit the owner to assert his title that the *laches* will bar his right within the statutory period. *Gibbons* v. *Hoag,* 95 Ill. 45; *White* v. *Sherman,* 168 id. 589.

The decree of the circuit court will be affirmed.

*Decree affirmed.*