GRAYCE L. GRANT *vs.* ISADOR SPRINGER.—(AUGUSTUS MERCER, Appellee, *vs.* THE BANK OF AMERICA, Exr., Appellant.)

*Opinion filed April 21, 1928—Rehearing denied June 7, 1928.*

1. PARTNERSHIPS—*when partner may be compelled to perform contract for conveyance.* Where two members of a real estate firm contract to sell certain property the record title of which is held in another member of the firm for the benefit of the partnership the title holder may be compelled to perform the contract, where by his conduct and affidavits and pleading in another suit he recognizes the existence of the partnership and the firm's beneficial ownership of the property, especially where he signs a receipt for part payment of the purchase price, although he claims he did not know the complainant was the purchaser.

2. LACHES—*when, only, may laches be invoked against complainant.* Neither *laches* nor estoppel will be permitted to work iniquity, and *laches* may not be successfully invoked against a complainant unless the delay alleged to constitute it is so great under the circumstances and the relations of the defendant to the complainant's rights are such that it would be inequitable to permit complainant to assert his rights.

3. SAME—*when, only, will laches, short of statutory period, bar relief.* It is only when the delay is attended by circumstances rendering it inequitable to grant relief that a period shorter than the Statute of Limitations will bar the right to relief.

APPEAL from the Circuit Court of Cook county; the Hon. FRANCIS S. WILSON, Judge, presiding.

WILLIAM T. PRIDMORE, for appellant.

PERLEY H. BISHOP, for appellee.

Mr. COMMISSIONER CROW reported this opinion:

A decree for specific performance of a contract for the sale of real estate was rendered upon an amended and supplemental bill by the circuit court of Cook county in favor

of Grayce L. Grant and against Searle S. Barnett, Paul P. Barnett and Isador Springer. Springer alone appealed to this court. After the appeal was perfected his death was suggested, and the Bank of America, as executor of his will, was substituted as appellant. Grayce L. Grant had transferred her title and interest in the property to one Augustus Mercer. That fact having been suggested upon the record in this court he was substituted as appellee.

The Barnetts were co-partners in the real estate business in Chicago. They and Isador Springer were also co-partners in the real estate business. The latter relation is designated in the record as a "special co-partnership." The Barnetts answered the original bill, admitting that Grayce L. Grant was entitled to specific performance of her contract to purchase the property described in the bill. Springer demurred to it, and the demurrer was sustained. After some delay she filed an amended and supplemental bill. The cause was heard on reference to the master upon that bill, answers, replications and evidence, oral and documentary. A decree for specific performance was rendered as prayed, to reverse which this appeal is prosecuted.

The amended and supplemental bill averred that the three defendants, as co-partners, were owners of the real estate in question, and that the partnership on March 27, 1920, (the date of the contract of purchase,) was known as Barnett Bros.; that the title to the premises was then in Isador Springer for the benefit of the partnership, consisting of Springer and the Barnetts; that on February 25, 1920, the partnership, through Springer, sold to complainant the property for the sum of $16,000; that J. L. Clay, a real estate broker, acted as agent of the partnership and of complainant in the sale; that complainant paid to Clay, as agent of the partnership, on said date $50 as earnest money on the contract sued upon, and that Springer, for

the partnership, accepted the money and gave to complainant a memorandum of the sale of the property as follows:

"*Feb. 25, 1920.*

"Received from J. L. Clay fifty dollars as deposit on premises 3716 & 18 Prairie Ave. to be sold for $16,000 bal. of $950 first payment to be made on or before March 6, 1920, or forfeit deposit of fifty dollars.

I. SPRINGER."

—that complainant went to the office of Springer on February 26, 1920, to pay the balance of $950 and to obtain the contract mentioned in the receipt; that Springer told complainant he was holding the property in question for the partnership of Barnett Bros., consisting of himself and the Barnetts; that he would make out the contract when complainant paid the further sum of $950; that Searle S. Barnett was then present in Springer's office and said he would make out the contract; that on March 27, 1920, Searle S. Barnett, for the partnership, delivered to complainant the contract for the property. It occupies six pages of the abstract. Such parts of it as are deemed material will be noticed hereafter. Complainant further averred that all of the six flats in the premises had been rented and occupied by tenants since she purchased the property, and that Springer received therefrom as rent from March 27, 1920, to February 20, 1923, the sum of $13,650; that the total amount charged against the premises, including thirty-four installments of $100 each required by the contract, amounted to $9095.24; that the total balance of the principal required to obtain a deed under the contract was $3600; that the total rents received, plus $1000 paid by complainant, as recited in the contract, amounted to $14,650; that the total amount necessary to obtain a warranty deed from defendants was $12,695.24, leaving a balance due from Springer to complainant of $1954.96. Complainant further averred that she had many times demanded a deed to the premises by virtue of the contract and that all of the defendants have failed and refused to deliver such

deed; that she has always been, and still is, ready, able and willing to pay to defendants the money due upon her contract to obtain the deed, and that defendants have refused, and still refuse, to comply with the agreement on their part and deliver to complainant a warranty deed according to the terms of her contract; that Springer had received rent of $65 per month from each of six flats in the premises and that she had been informed that he had received the sum of $70 per month for each of the flats; that she had many times demanded of every member of the partnership possession of the premises but that possession had been wrongfully withheld from her by Springer; that Springer had always admitted that the property was the property of the partnership. The prayer for relief was that defendants be required to specifically perform the contract and convey to her the premises and for an injunction restraining Springer from collecting rents from the tenants in possession and from withholding possession of the premises from her. She offered to specifically perform the agreement on her part and asked for an accounting of the rents received by him. She attached to her bill as an exhibit the agreement to convey to her the property in question.

Springer's amended answer to the amended and supplemental bill of complaint admitted that he and the Barnetts were co-partners in a special partnership and as such co-partners they were owners of the real estate in question. The answer averred that some parties came to know of the special partnership as Barnett Bros.; that Searle S. and Paul P. Barnett transacted considerable business as Barnett Bros. in which he had no interest and which business was not the business of the special partnership of which he was a member; that the Barnetts made many purchases, sales, exchanges and other transactions concerning real estate in Chicago in which he had no interest and in many instances no knowledge whatever; that the Barnetts designated themselves and did business by the designation of

Barnett Bros. and as such co-partners transacted their business under that firm name; denied that the special partnership sold to complainant the property, and denied that J. L. Clay, a real estate broker, acted as agent of the special partnership at any time, or that complainant paid to the special partnership, or to him, the sum of $50 on February 25, 1920, but averred that Clay paid to him $50 as a broker in exchange for a receipt shown as complainant's exhibit to her bill and that Clay did not disclose to him the name of his principal; denied that complainant was disclosed to him as an interested party in the transaction at any time previous to March, 1920; denied that complainant was at his office on February 26, 1920, or that he on that day had any conversation with her; denied that Searle S. Barnett delivered to complainant, on behalf of the special partnership of which he was a member, a contract for the sale of the real estate in question, but averred that Barnett did deliver a contract for the sale of the premises to complainant which purported to be with the partnership of which the Barnetts were the only members and in which he never had any interest; denied that complainant paid to Searle S. Barnett $950 as part of the purchase price of the real estate for the benefit of the special partnership of which he was a member, or that any contract had ever been made between complainant and the special partnership at any time concerning the purchase of the real estate, or that he had collected the sums set out in the amended and supplemental bill of complainant, or that complainant is entitled to credit for any sum therein set out; averred that he was ready, willing and able to pay any balance which the court might legally determine is due and owing to complainant from him, either as an individual or as a special partner of the special partnership consisting of the defendants to the bill; admitted that complainant had demanded a deed to the premises, and averred that he offered to give such deed to complainant upon the Barnetts joining therein; that he had

a deed prepared and delivered to one of the agents or attorneys of complainant, who presented it to the attorney for the Barnetts, but that they refused to execute the deed with him, Springer; that he had always been ready and willing to convey the premises to complainant at any time that she would produce a memorandum in writing signed by at least one of the Barnetts stating that the premises had been sold to complainant under a contract with the special partnership, and upon the production of the contract or memorandum in writing stating that complainant had so far performed her part of the partnership contract as to entitle her to receive a deed to the premises, but that the Barnetts had always declared to him and in the pleadings in this cause that the contract sued upon was not a contract with the special partnership but that they executed the contract for the sale of the premises as tenants in common with him, wherefore he states that he had no knowledge of any contract for the sale of the premises to complainant by the partnership of which he was a member; denied that as an individual he had withheld the possession of any part of the premises from complainant, and averred that if complainant had any right in the premises, his action in opposition thereto, if any, has been as a member of the special partnership consisting exclusively of the defendants; admitted that the property was the property of the special partnership consisting exclusively of the defendants, and averred that the contract upon which suit was brought was not a contract with the special partnership but that the pretended contract is in fact not a genuine or real contract; that the second contract executed by the Barnetts was the real contract entered into between them and complainant, and that he was not a party to it and it was not a contract with the special partnership; that the Barnetts conspired and confederated together with the agents, solicitors and attorneys of complainant to unlawfully compel him (Springer) to part with the title to the property which he

holds for the benefit of the special partnership consisting of himself and the Barnetts.

The bill upon which the decree was rendered, and the answers thereto, show that complainant was entitled to the relief granted by the decree. Stripped of its superfluous averments of legal conclusions and unauthorized conclusions of fact, we think the natural inference to be drawn from Springer's answer is that complainant was entitled to the relief granted. Springer and the Barnetts became involved in litigation with regard to partnership property about the time this controversy began. It happened that Searle S. Barnett was present in Springer's office when J. L. Clay went to that office to see Springer about the contract the next day after payment of the earnest money. When he approached Springer about it, Springer said that he and Barnett were co-partners in the lots and that Barnett would write the contract. Barnett went with Clay to an attorney's office and a contract of sale was signed by the Barnetts and Grayce L. Grant on March 27, 1920. It purported to be a contract between the Barnetts, "of the firm of Barnett Bros.," and Grayce L. Grant, and agreed to convey to her the premises in question. It acknowledged receipt of the initial payment of $1000. On the same day the Barnetts and Mrs. Grant entered into a contract designated in the record as an "indemnifying bond." It recited the agreement for the sale of the premises to complainant, the filing of a bill for partition by the Barnetts against Springer involving the lot in question and others, the payment of $1000 by her on the purchase price of the property, and the contract for the payment of the remainder of the purchase price. By it they agreed to protect her in all payments she should thereafter make in discharge of the contract; that if, after the termination of the partition suit, it should not be possible, under the decree rendered, to deliver title to the property to her as provided in the contract of purchase, they would immediately re-pay to her all money

she had paid on the contract, with interest, costs and attorney's fees. As to the Barnetts, their estoppel is complete and they are not complaining of the decree.

The Barnetts filed a bill for partition, to which Springer was a defendant. It sought an accounting and a partition of part of the real estate owned by them and Springer. In the bill they charged that they were tenants in common, he owning one-half·and they each one-fourth of the property. The property now in question was part of the real estate sought to be partitioned. In that suit Springer filed a plea to the bill, and for plea said: "As to all of the real estate in the said bill mentioned, complainants and this defendant are not owners in fee simple as tenants in common of said real estate, but complainants and this defendant are co-partners engaged in the buying, selling, exchanging and leasing of real estate and in the building of improvements thereon, and that all of the real estate in the said bill mentioned was acquired by said partnership and not by complainants and this defendant as tenants in common; that parcel 1 was sold to this defendant by agreement of all the members of the said partnership and ceased to be property of said partnership on, to-wit, February 21, 1920, and that any and all conveyances relating to parcel 1 that have been made since were after this defendant had purchased said real estate from said partnership, and that this defendant has not been guilty of fraud upon the rights of complainants; that this defendant is informed, and believes the fact to be, that complainants, since the filing of this bill, have sold lot 22 of parcel 2 to a Mrs. Grant on terms unknown to defendant; that said partnership is no longer the owner of said lot 22; * * * that this defendant is the owner of one-half of the partnership and that each of the complainants is the owner of one-quarter of said partnership." The plea was under oath.

Again, while taking J. L. Clay's deposition in the case of the Barnetts against Springer the following occurred:

Mr. Ring, attorney for complainants: "It is hereby stipulated by and between the parties hereto that Isador Springer, the defendant, has the legal title to the premises 3716 and 3718 Prairie avenue, Chicago, [the property in controversy,] and that the title is held by him for the benefit of himself and conplainants.

Mr. Pridmore, attorney for defendant: "That is all right."

In the same case Springer was a witness, and the question was asked, "What is your business relations with the complainants in this suit?" and he answered: "I am a partner in all the transactions that we have concluded from the time we started in; that is several years ago." In the same case Springer filed an affidavit in resistance to the application by complainants for the appointment of a receiver. He therein stated that he was the principal defendant, and that he was the owner of a one-half interest in the property and profits of a partnership, "the members of said partnership being Searle S. Barnett and Paul P. Barnett, doing business as Barnett Bros., and this affiant, Isador Springer; that all of the real estate mentioned in the bill for partition filed herein was the property of the partnership and that all except parcel 1 mentioned therein is now partnership property."

The first contention of appellant is that the decree is not supported by the evidence; that there were two partnerships known as Barnett Bros.—one consisting of Searle S. and Paul P. Barnett only, and the other, of the Barnetts and Springer; that both were engaged in buying, selling, improving and exchanging real estate, and that the master designated the partnership in which Springer was a member as a "special partnership." The master stated at the hearing that to avoid confusion the firm of the Barnetts and Springer would be so designated. That was the partnership that was sought to be compelled to convey the real estate in question and is a proper designation for the purpose.

Now it is said by counsel: "If the contract is not with that partnership of which Springer was a member at the time it was made then Springer should not be required to do anything to assist in the performance of it. If it is a contract with the partnership of which Springer was a member then Springer is bound by the contract, although he had no part in the transaction."

February 25, 1920, Springer delivered to J. L. Clay, a real estate broker, a receipt for $50 as a deposit on the purchase of the premises involved, reciting in the receipt for the earnest money that the sale price was $16,000, and that the balance of $950 as a first payment was to be made on or before March 6, 1920, or the money deposited would be forfeited. The next day Clay went to Springer's office to complete the first payment and to obtain a contract for the purchase of the property. Springer told him that Searle S. Barnett, who was then in his office, would make out the contract. Barnett went with Clay to an attorney's office where the contract was prepared, describing the identical property in Springer's receipt for the deposit. The first paragraph of the contract reads: "This agreement witnesseth, that Searle S. Barnett and Paul P. Barnett, of the firm of Barnett Bros., a partnership doing business as Barnett Bros., of the city of Chicago, parties of the first part, sell and agree to convey to Grayce L. Grant" the property in controversy. It is difficult to understand how it can reasonably be regarded that the contract with complainant was other than one between her and the partnership designated in the record for the purpose of the trial as a "special partnership" consisting of Springer and the Barnetts. It embraced the property standing on the record in the name of Springer. He knew that when he told Clay that Barnett would prepare the contract. Clay, representing Mrs. Grant, was then offering to complete the contract by making the first payment on the purchase of the only property he (Clay) had attempted to purchase. He paid the Barnetts

the remainder of $950 on that day. When Springer sent
Clay, with Barnett, to procure a completion of the contract,
which included the first payment, he authorized the pur-
chaser to trust Barnett as his co-partner. Mrs. Grant and
Clay understood that they were partners. There can be no
doubt that they were as to that property. Again, if Springer
could make a binding memorandum to sell the special part-
nership property, the Barnetts could certainly make a bind-
ing contract to sell it when Mrs. Grant was complying with
the terms of the memorandum and receipt for the first
payment executed by Springer. Without his memorandum
they could have made the contract. It is noteworthy in this
connection that when Barnett procured the contract of sale
to be written, it was written as one between Mrs. Grant
and Searle S. and Paul P. Barnett, "of the firm of Barnett
Bros." There is nothing in the record suggesting any other
member of the firm owning the property in question except
Springer. If Springer had employed a similar expression
in writing his memorandum there would be no ground for
contending that the second contract was not with the firm.
He did not recite in it, as did Barnett, that it was done by
Springer, "of the firm of Barnett Bros.," though the evi-
dence shows, beyond a reasonable doubt, that in its legal
effect it was so made. The evidence, aside from Springer's
admissions, is ample proof of the partnership, but his dec-
larations of record in the different suits to which he was a
party estop him from denying that relation now. It is not
necessary to consider this point further.

What is said as to the first contention answers the fur-
ther insistence in the brief as to the effect of a transaction
where a firm sought to be charged is composed of members
of that and another firm. Only the firm owning the prop-
erty involved can be compelled to perform a contract with
respect to it. There is no ambiguity in the record as to
Springer and the Barnetts being the responsible firm. The
decree is in accord with the facts.

It is said that equity decrees specific performance of contracts only when it is inequitable and unjust to permit them to remain unexecuted, and therefore the decree in this case is wrong. The principle announced is correct; the conclusion is wrong. The only question presented by the record is one of fact. The evidence and facts admitted by defendants have been stated with unusual fullness for that reason. Much more to the same effect is in the record, but it is deemed unnecessary to quote more extensively. A careful examination of the abstract of the record discloses no fact upon which any doubt can be grounded as to the right of complainant to the relief granted. The legal title to the property was in Springer and he and the Barnetts were becoming involved in a controversy. While Springer had received the first payment from Mrs. Grant through Clay, her broker, and sent Clay, with Searle S. Barnett, to have the contract for the purchase of the property executed and the first payment completed, he obstructed her in her attempt to gain possession of the property after the execution of the contract. If he did not know Clay was representing her, the Barnetts did know it. He called her by telephone and told her that she should never get possession. The Barnetts recognized her right to the property. They were willing to execute a conveyance of it to her. A deed was prepared conveying the property to her. The matter of its execution was discussed. Ring, attorney for the Barnetts, said he would not allow his clients to sign it unless Springer signed it first. Springer would not join in the conveyance—at least he would not sign it before the Barnetts signed it. Equity and justice required the decree that was rendered.

It is contended that in some way the indemnifying contract executed by the Barnetts with complainant taints her right to the relief granted. It seems the very spirit of fairness and of right. She had a receipt for the first payment of the purchase price from Springer. The Barnetts had

begun a suit in equity against Springer to partition the property. Springer was resisting their suit, and on March 27, 1920, filed an affidavit in support of his resistance to the appointment of a receiver *pendente lite.* The purpose of the contract was to assure her of the protection of her rights in the possession of the property pending the litigation and after its termination. It further assured her protection against loss whatever might be the result of the litigation between the Barnetts and Springer. Nothing illegal, inequitable or censurable can be found in the transaction complained of.

The final contention of counsel is that complainant did not show that she had been ready, able and willing to perform the contract on her part, and therefore she was not entitled to the decree; that she did not show that she attempted to make the payment of an installment of $100 due on April 27, 1920. It is safe to assume, in view of the hostility to her demand, that if she was derelict in that respect, or in any other entitling her to relief, the record would disclose it. But if she had not paid the installment, under the facts in this case it would not affect her right to relief. A court of equity does not concern itself with trifles. Counsel asks why she did not call on Springer and show him her contract, so that he might act intelligently and with knowledge of the facts. The obvious reply is, if he did not know the fact, why should she rely on him or expect him to act intelligently or fairly toward her? As shown by the record she did perform her part of the contract—not with Springer personally, but with those jointly interested with him and with whom she was dealing. It is further said she abandoned the contract. The basis for that contention is that a demurrer had been sustained to her first bill. She had leave to file an amended bill, but not having filed it within the time allowed the suit was dismissed for want of prosecution. On her application the order of dismissal was vacated and she was permitted to

file instanter the amended and supplemental bill upon which the decree was rendered.

*Laches* may not be successfully invoked unless the delay alleged to constitute it is so great under the circumstances, and the relations of the defendant to the rights are such, that it would be inequitable to permit complainant to assert them. There is nothing in this case disclosing such conditions. The claim of complainant had been pressed with reasonable celerity, and those jointly interested with Springer had admitted her right to a decree. The evidence and admissions of record by Springer confirm their admission. The record in this case discloses no defect in the merits of her demand. The salutary principle underlying estoppel and *laches* has no application or place in this case. Neither principle will be permitted to work iniquity. Nothing in the record shows or suggests that the delay relied on prejudiced the rights of Springer. It is only when the delay is attended by circumstances rendering it inequitable to grant relief that a period shorter than the Statute of Limitations will bar the right. (*Compton* v. *Johnson*, 240 Ill. 621.) The defense is therefore groundless. (*Troyer* v. *Erdman*, 320 Ill. 140.) The cases relied on by appellant announce the equitable doctrine that after a long period has elapsed courts of equity will be cautious in enforcing specific performance of a contract where there is any real doubt about its existence and terms. No such conditions exist in this case.

The decree was right, and it is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*