GILLESPIE *v.* DUNN.

1. PUBLIC LANDS—PURCHASE ENTRY CONSTITUTES ENTRYMAN POS-
SESSOR.

Purchase entry of certain public land, as shown by the original
government book, constituted an appropriation of the tract,
segregated it from the public domain, and, unless and until
canceled, forfeited, or formally relinquished, precluded entry
by sale or grant to another, and said entry also constituted the
entryman the lawful possessor and clothed him with inceptive
title, entitling him to maintain suit in equity or at law to
obtain redress for any violation of his possessory rights.

2. COURTS—VALIDITY OF FEDERAL PATENT TO LAND MAY NOT BE
ATTACKED IN STATE COURTS.

The validity of a patent issued under the timber and stone act
(43 USCA § 311), is a subject of Federal jurisdiction, and,
therefore, may not be attacked in the State courts.

3. ESTOPPEL—ADVERSE POSSESSION—PRESCRIPTIVE RIGHT OF FLOW-
AGE.

An adjudication in a former suit that plaintiffs and their grant-
ors had been in adverse possession for upwards of 20 years
estops them from claiming in the present suit to have flowage
abated that title was in the Federal government, precluding
defendants from acquiring prescriptive right of flowage.

4. WATERS AND WATERCOURSES—ARTIFICIAL BODY OF WATER HAS NO
NATURAL LEVEL.

Since to serve the purpose of a millpond or artificial lake, the
level of the water must necessarily fluctuate, there can be no
such thing as a natural level of water therein.

Appeal from Oakland; Perkins (Willis B.), J.,
presiding. Submitted January 18, 1929. (Docket
No. 73, Calendar No. 34,133.) Decided March 29,
1929.

Bill by Glenn C. Gillespie and Dan A. McGaffey against James Dunn and Elizabeth Dunn to abate flowage on certain lands or water level maintained at a certain level. From decree dismissing bill, plaintiffs appeal. Affirmed.

*Pelton & McGee,* for plaintiffs.

*George A. Cram,* for defendants.

WIEST, J. Plaintiffs, owners of a subdivision bordering an artificial lake or pond created by a mill dam, filed the bill herein to have flowage of 30 acres of their unplatted land abated, or the natural level of the artificial lake determined and decreed to be maintained. Plaintiffs appealed from a decree dismissing the bill. If flowage of plaintiffs' land is abated their subdivision will lose its water advantages, and many other owners of land bordering the lake, and not parties herein, will likewise be damaged, and it is clear that plaintiffs do not want the lake destroyed by the lowering or removal of the dam, for they tender consent to the flooding of the 30 acres, if the level of the lake is maintained to a designated point. The dam has flowed the land for upwards of 50 years, and defendants rely on a prescriptive right. Against this plaintiffs point to a patent issued by the United States on June 25, 1920, to their grantor, and contend that, while the title was in the Federal government, no prescriptive right of flowage could be acquired. If plaintiffs may plead the patent, as conclusive between the parties to this suit upon the subject of prescriptive right, then defendants have no such right. Plaintiffs, however, as we will point out, are in no position to claim that the patent concludes the issue of prescriptive right.

The original government entry book for Oakland county shows that George Subnedio made purchase entry of the land in suit on December 16, 1892. This entry constituted an appropriation of the tract, segregated it from the public domain, and, unless and until canceled, declared forfeited, or formally relinquished, precluded entry by sale or grant to another. *Sturr* v. *Beck,* 133 U. S. 541 (10 Sup. Ct. 350); *Holt* v. *Murphy,* 207 U. S. 407 (28 Sup. Ct. 212). The entry constituted Subnedio the lawful possessor of the land, clothed him with inceptive title which entitled him to maintain suit in equity or at law to obtain redress for any violation of his possessory rights. *United States* v. *Buchanan,* 232 U. S. 72 (34 Sup. Ct. 237). What happened to the Subnedio entry, whether canceled, forfeited, abandoned, or relinquished, does not appear in this record. We are, therefore, left to indulge the *prima facie* presumption of due official action to the effect that the land appropriated and withdrawn by the entry from the mass of public land open to homestead entry, pre-emption, settlement, sale, or grant, reverted to the government and was no longer segregated from the public domain. There is, however, in the record and, as we understand it, on file with the entry, a letter dated August 15, 1900, written by the register of the land office at Marquette, stating that the land was "embraced in the adjoining farm entry of Geo. Subnedio (9639), made Dec. 16, 1892," and "the land is therefore not subject to entry." No conveyance by Subnedio appears, but soon after his entry the land was conveyed several times by others.

The patent under which plaintiffs claim was issued under the timber and stone act (43 USCA § 311). Defendants attack the validity of the patent, claim-

ing fraud perpetrated in its procurement. We may not pass upon such issue. *Field* v. *Seabury,* 19 How. 323; *Steel* v. *Smelting Co.,* 106 U. S. 447 (1 Sup. Ct. 389). Action, if any, to void or annul the patent, is a subject of Federal jurisdiction, and the prosecution must be by the United States or proper Federal official. We must accord the patent full faith and credit. But this does not, as between the parties here, conclude the issue of prescriptive right.

Plaintiffs, after conveyance to them by the patentee, filed a bill in the Oakland circuit court in chancery to quiet their title as against Subnedio and subsequent grantees in deeds of record, and on May 15, 1925, obtained a decree in which the court specifically made the following findings of fact:

"It appearing to the court that the plaintiffs, Dan A. McGaffey and Glenn C. Gillespie, and their immediate grantors have occupied, owned, controlled, and managed and have been in open, notorious, continuous, peaceable, and adverse possession, use, and occupation, under a claim of ownership, for a period of 20 years and upwards of the lands   *   *   *."

This adjudication of fact procured by plaintiffs supplied the proof essential to sustain defendants' claim of prescriptive right, and estops plaintiffs from now claiming otherwise. Defendants were not parties to that suit.

The proofs show continuous flowage of the land in suit for upward of 50 years, and, a court of competent jurisdiction having determined, at the request of plaintiffs herein, that they and their immediate grantors have been in possession of the premises upward of 20 years preceding the year 1925, defendants could, and as against any claim available to plaintiffs now, did, acquire a prescriptive right of flowage.

Upon the question of right to have the natural level maintained, we need but say that this question was adjudicated in the circuit court for the county of Oakland, in chancery, in a suit brought for that purpose by direction of the board of supervisors, and the court held that a natural level cannot be fixed for an artificial body of water. The lake, so-called, is really a millpond. To serve its purpose the level of water in the pond must necessarily fluctuate. There can be no such thing as a natural level of water in a millpond or artificial lake.

For the reasons we have stated, the decree in the circuit is affirmed, with costs against plaintiffs.

NORTH, C. J., and FEAD, FELLOWS, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.