CHARLES O. FINLEY, Plaintiff-Appellant, *v.* SHARON FINLEY KESLING *et al.*, Defendants-Appellees.

First District (4th Division)    No. 81-945

Opinion filed March 18, 1982.

Mitchell S. Rieger, Aaron J. Kramer, Patrick J. Ward, and Frederick J. Sperling, all of Schiff, Hardin & Waite, and Raymond J. Smith and Ellen G. Robinson, both of Burke and Smith, Chartered, both of Chicago, for appellant.

Leonard M. Ring and Judith E. Fors, both of Leonard M. Ring and Associates, of Chicago, for appellee Shirley M. Finley.

Jonathan B. Gilbert and Arthur M. Holtzman, both of Pederson & Houpt, of Chicago, for other appellees.

JUSTICE ROMITI delivered the opinion of the court:

The plaintiff in this case was previously a party to a divorce action in Indiana. In that case he testified, under oath, that he owned 31% of certain stock, his wife 29% and his children 40%. The Indiana court accepted this testimony and so divided the particular property. Now the plaintiff has filed a lawsuit in Illinois claiming beneficial ownership of the stock which in Indiana he had testified was owned by the children. The trial court, while aware that Indiana will not apply collateral estoppel unless mutuality is present, held that even though the children were not parties to the Indiana action, it would be contrary to Illinois public policy to allow plaintiff to deny either his own previous testimony or the Indiana decree and to carry this issue further, and dismissed the action. We agree and affirm.

In 1954 the plaintiff, Charles Finley, organized a previously founded

insurance brokerage business into Charles O. Finley & Co., Inc., an Illinois corporation. At that time, in view of his poor medical history and for tax reasons in the event of his early death, he put 10% of the stock in each of his four children's names. The remaining 60% was divided between Finley and his wife. Although other children were born after 1954, no stock was given to them.

At the time of its formation in 1954, the total capitalization of the corporation was $5,000, all of which was contributed by Finley. In 1961, the corporation became the owner and operator of a major league professional baseball franchise; this was sold in 1980. At the same time the corporation, which now has a shareholder equity in excess of $20,000,000, adopted a plan of liquidation and distribution. Finley in the present action claims that although 40% of the stock is registered in the children's names they are not entitled to any part of the liquidating distributions of the corporation.

As already stated, Finley filed this declaratory judgment action seeking a declaration that the children are not beneficial owners of the stock and that he is the beneficial owner of the stock. Defendants filed a motion to dismiss, pursuant to section 48(d) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 48) on the grounds of *res judicata*. The pleadings and briefs of the parties in the trial court disclose that in about 1974, Shirley M. Finley, then the wife of the plaintiff, filed a suit for divorce in Indiana. At the hearing on her motion for temporary support, Finley testified:

"* * * So I said, 'Well, that does sound like a good idea to give the stock to the kids and the wife.' So I decided that I'd give her 29 percent and the four children 10 percent each. That was a total of 69 percent of the stock that I gave at the time I formed the corporation for tax purposes. That was my thinking in the event of an early death.

Q. Let me ask this: Was that done, then, as part of an estate plan contemplating your early death perhaps?

A. Yes, yes, it was part of the beginning of my estate planning.

* * *

Q. * * *—by the way, does the stock still remain in the same percentage—29 percent to Mrs. Finley, 31 to you and 10 to each of the four children.

A. Yes, it does.

Q. (Continuing)—that it did in 1954?

A. Yes, it does.

* * *

Q. How was that stock set up?

A. Identical to the stock of the Chicago corporation. I gave Mrs.

Finley 29 percent and the children 10 percent each—and for the same reason, for my estate planning, especially in event of an early death. In the event of an early death, I might say, they would have saved a tremendous amount of money on the stock."

Likewise at a hearing on another motion Finley testified on direct examination:

"I personally own, I have 31 percent. Mrs. Finley owns 29 percent and four of the children own 10 percent each. So my wife and four children own 69 percent and I own 31 percent."

One of the sons, Paul Finley, was called as a witness by his father. He testified on direct examination that he was one of the children who were stockholders with 10% interest. In addition, Finley's attorney filed a motion to reopen for the introduction of further evidence "critical in establishing the net worth of the corporation and the value of the stock of Shirley Finley, Charles Finley and the children in that corporation." Likewise, in the memorandum attached to the motion to correct errors, counsel reiterated that "as an estate planning device, Mr. Finley received 31% of the shares of each corporation, Mrs. Finley 29% of the shares and the remaining 40% was divided equally among the four (4) children living at that time." The trial court in its decree of dissolution found that:

"The capital stock of Charles O. Finley of Illinois and Charles O. Finley of Indiana is now and has been for many years owned in these proportions: 31 percent by the husband, 29 percent by the wife and 40 percent in equal proportions by four of their children. Thus as to these two corporations we are concerned only with 60 percent of their authorized, issued and outstanding capital stock."

The court decreed that the parties should retain as their separate property the shares of the capital stock issued to them in the corporation, namely 31% to Finley and 29% to his wife. In additition, the Indiana appellate court in 1977 on an appeal from an interlocutory order stated "The husband holds thirty-one per cent of the corporate stock and the wife holds twenty-nine per cent of the corporate stock. The remaining forty per cent of the corporate stock which is not part of the marital estate is divided equally among four of their children." *Finley v. Finley* (Ind. App. 1977), 367 N.E.2d 1126, 1127.

The Illinois trial judge granted the motion to dismiss and dismissed the proceedings with prejudice. The written order expressly adopted his oral opinion in which he stated in part:

"Every relevant stage along the way to the final divorce decree, the plaintiff either affirmatively stated or acquiesced in the trial [and] in the Appellate Court case that he owned 31 percent and the four children owned the total of 40 percent. I cite specifically Mr. Finley's direct testimony under questioning by his attorney, Mr.

Ruman, Exhibit E, in the children's reply, Mr. Finley saying, 'I personally own, I have 31 percent, Mrs. Finley owns 29 percent, and the four children own 10 percent each, so that my wife and four children own 69 percent, and I own 31 percent.' If the plaintiff, Mr. Charles Finley, here ever asserted in Indiana, as he does here, that he owns 71 percent, the formula for the property distribution would have been considerably different than the one ultimately adjudged and the Indiana trial court's opinion could not possibly read the way it does read. And further, had Mr. Finley made such a claim, his wife could have and the four children certainly would have contested that assertion. Indeed, it's my belief that had the plaintiff made such a reach into the children's pockets in the process of the divorce action that it would have been necessary for him to bring them into that case to resolve the issue. He didn't do that. There, apparently, was no contest on the percentage of the stock ownership in the children because the plaintiff never raised that issue in Indiana. And there was no reason for Mrs. Finley or the children to raise it since they concurred in his representation on the record and since they concurred in the findings by both the trial court and the Appellate Court.

If the text writers need a classic example of the folly of requiring mutuality of estoppel for estoppel by verdict, these facts and the plaintiff's inconsistent positions taken in sister states supply it.

To my view, it's immaterial here to debate over which state law on estoppel governs because Illinois has a strong public policy against the application of law in such a way as to subject the law to ridicule, against the application of law which generates absurd results, against the application of law in a manner which honor form over substance and which generates inequitable results. Illinois courts cannot allow the plaintiff here to carry this issue further without doing violence to its own public policy."

Finley does not deny the statements he made and caused to be made in the Indiana court proceedings. Nor does he claim they were made by mistake, accidentally or without full knowledge of the facts. Likewise, he does not deny that the Indiana trial court found that the children owned the stock and that the Indiana appellate court stated the children owned the stock and it was not marital property. Finley has never suggested that at any time he attempted to correct these "misapprehensions" of the Indiana courts. Indeed, he has claimed in his brief and at oral argument that his wife could have the Indiana divorce award set aside and additional sums awarded if that court deemed such award proper. What he does contend is that, despite all this, he is not bound by the Indiana

holdings because the children were not parties to the lawsuit and thus there could be no mutuality of estoppel and that Illinois is constitutionally required under the full faith and credit clause to follow Indiana's doctrine of collateral estoppel rather than its own. It is not disputed that under the Illinois doctrine of collateral estoppel, Finley would be barred from bringing this action.

I

Indiana, unlike Illinois, still requires mutuality before it applies the doctrine of collateral estoppel. Indeed in one recent case, *Indiana State Highway Com. v. Speidel* (Ind. App. 1979), 392 N.E.2d 1172, *appeal denied*, the Indiana appellate court refused to apply the doctrine of collateral estoppel even though the parties had all been parties to a prior decision where the parties seeking to rely on the prior judgment would not have been bound by it had it gone the other way. We have difficulty believing that even Indiana, reluctant as it may be to follow the modern trend of cases abandoning the requirement of mutuality (see Annot., 31 A.L.R.3d 1044, 1067 (1970)), would permit Finley to avoid the effect of a ruling set forth not only in the judgment but in an appellate court decision, a ruling which he himself apparently had sought and which was based on his own pleadings and testimony and that of one of his witnesses. But it is not necessary to guess whether Indiana would cling to the doctrine of mutuality under these peculiar circumstances at the price of "[subjecting] the law to ridicule." While we are required by the full faith and credit clause to give effect to the Indiana judgment, we are not required to give effect to the Indiana rules limiting application of the doctrine of collateral estoppel at the price of "[generating] absurd results."

Article IV, section 1 of the Federal constitution requires that "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State." The intended purpose of this clause is "to alter the status of the several states as independent foreign sovereignties, each free to ignore obligations created under the laws or by the judicial proceedings of the others, and to make them integral parts of a single nation throughout which a remedy upon a just obligation might be demanded as of right, irrespective of the state of its origin." (*Milwaukee County v. M. E. White Co.* (1935), 296 U.S. 268, 277, 80 L. Ed. 220, 228, 56 S. Ct. 229, 234, quoted in *Order of United Commercial Travelers of America v. Wolfe* (1947), 331 U.S. 586, 618, 91 L. Ed. 1687, 1705, 67 S. Ct. 1355, 1370.) Its intended function is to avoid the relitigation in other States of adjudicated issues. (*Sutton v. Leib* (1952), 342 U.S. 402, 96 L . Ed. 448, 72 S. Ct. 398.) On the other hand this clause does not compel the courts of one State to subordinate the local policies of that State to the policies and laws of another State. *Williams v.*

*State of North Carolina* (1942), 317 U.S. 287, 87 L. Ed. 279, 63 S. Ct. 207; *Biddy v. Blue Bird Air Service* (1940), 374 Ill. 506, 30 N.E.2d 14; *Application of Schatz* (1972), 80 Wash. 2d 604, 497 P.2d 153.

■■ It is undisputed that, as Finley contends, the judgment of a State court is entitled to the same validity and effect in another State as it has in its own and that the only pleas which can be raised against it in a second State are those which would be good to a suit thereon in the first State. (*Hampton v. M'Connel* (1818), 16 U.S. (3 Wheat.) 234, 4 L. Ed. 378; *Lawrence v. Jarvis* (1863), 32 Ill. 304; *Welch v. Sykes* (1846), 8 Ill. (3 Gilm.) 197.) The full faith and credit clause is intended to establish as constitutional law the principles embodied in the common law doctrine of *res judicata*. (*Brownlee v. Western Chain Co.* (1977), 49 Ill. App. 3d 247, 364 N.E.2d 926, *appeal denied* (1977), 66 Ill. 2d 629, *cert. denied* (1978), 435 U.S. 968, 56 L. Ed. 2d 59, 98 S. Ct. 1605, and see *Riley v. New York Trust Co.* (1942), 315 U.S. 343, 86 L. Ed. 885, 62 S. Ct. 608.) So that just as the doctrine of *res judicata* bars parties from relitigating a cause of action in the same State, it, through the constitutional provision, bars them from relitigating the cause of action in a different State.

It is also true, as Finley contends, that a judgment has no constitutional claim to a greater effect in the second State than it had in the first. (*New York ex rel. Halvey v. Halvey* (1947), 330 U.S. 610, 91 L. Ed. 1133, 67 S. Ct. 903.) And of course where the first court had no jurisdiction, the constitutional requirement is not applicable. *Halvey*; *Bigelow v. Old Dominion Copper Mining & Smelting Co.* (1912), 225 U.S. 111, 56 L. Ed. 1009, 32 S. Ct. 641.

■■ However, this does not mean that even though a State is not required by the constitution to give greater effect to a judgment than would the courts of the first State, it cannot give greater effect to the adjudication of the issue therein than would the first State. Finley has cited no case, and we have found none, which holds that a State is barred either by the full faith and credit clause or by section 1738 of the United States Code of Judiciary and Judicial Procedure (28 U.S.C. §1738 (1976)) (which, enacted pursuant to the constitutional mandate, requires that such acts, records and judicial proceedings have the same full faith and credit as in the courts of the State from which they were taken) from applying its own doctrine of collateral estoppel but instead must give effect not only to the judgment of the first State but to the rules of that State as to when collateral estoppel is to be applied. To the contrary, it has been recognized that the forum State may apply its own rules of collateral estoppel. *Clark v. Clark* (1964), 80 Nev. 52, 389 P.2d 69; *Hart v. American Airlines, Inc.* (Sup. 1969), 61 Misc. 2d 41, 304 N.Y.S.2d 810; *Collateral Estoppel in Multistate Litigation*, 68 Colum L. Rev. 1590 (1968); Carrington, *Collateral Estoppel and Foreign Judgments*, 24 Ohio St. L. J. 381 (1963), and

8

compare *Bigelow v. Old Dominion Copper Co.* (1912), 225 U.S. 111, 56 L. Ed. 1009, 32 S. Ct. 641.

As stated in *Hart*, 61 Misc. 2d 41, 44, 304 N.Y.S.2d 810, 813-14:

"Defendant's reliance on 'full faith and credit' to defeat the application of collateral estoppel herein is misplaced. This is not a situation where the judgment, as such, of the Texas court is sought to be enforced. What is here involved is a policy determination by our courts that ' "One who has had his day in court should not be permitted to litigate the question anew" ' B.R. DeWitt Inc. v. Hall, 19 N.Y.2d 141, 144, 278 N.Y.S.2d 596, 599, 225 N.E.2d 195, 197, (supra), and, further, refusal 'to tolerate a condition where, on relatively the same set of facts, one fact-finder, be it court or jury' may find a party liable while another exonerates him leading to the 'inconsistent results which are always a blemish on a judicial system' (Schwartz v. Public Admin. of Co. of Bronx, 24 N.Y.2d 65, 74, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 730, supra). It is in order to carry out these policy determinations in the disposition of cases in this jurisdiction that an evidentiary use is being made of a particular issue determination made in the Texas action."

■■ ■ We recognize, although Finley does not raise the point, that as a simple choice of laws question, the effect of a judgment on the issues involved may be determined by the local law of the State where the judgment was rendered. (Restatement (Second) of Conflict of Laws §95 (1971), but see criticism in Carrington, *Collateral Estoppel and Foreign Judgments*, 24 Ohio St. L. J. 381 (1963).) But the applicability of such conflict of laws principles is always subject to the public policy of the forum State. This policy was accurately set forth by the trial court in this case.

II

However, even if this court were barred by either the full faith and credit clause or section 1738 of the Judicial Code from applying the doctrine of collateral estoppel if Indiana would not, Finley would still be barred by judicial estoppel from pursuing his claim here. The doctrine of judicial estoppel applies not to the judgment but to the testimony in the case. Accordingly both the constitutional and the statutory full faith and credit provisions are inapplicable and Illinois is free to apply its own law to determine whether a person may, in an Illinois court, contradict his sworn testimony in prior litigation.

■■ The rule of judicial estoppel is a rule which estops a party from playing "fast and loose" with the court (*Gray v. Fitzhugh* (Wyo. 1978), 576 P.2d 88; *Citizens Bank v. C & H Construction & Paving Co.* (N.M. App. 1976), 89 N.M. 360, 552 P.2d 796, *cert. denied* (1976), 90 N.M. 7, 558 P.2d

619, *modified as to amount of award* (1977), 90 N.M. 208, 561 P.2d 481; *Behrens v. Baldenecker* (1956), 76 S.D. 327, 77 N.W.2d 917; *Selected Risks Insurance Co. v. Kobelinski* (E.D. Pa. 1976), 421 F. Supp. 431), or blowing "hot and cold" (*Garden City Sand Co. v. Christley* (1919), 289 Ill. 617, 124 N.E. 729) during the course of litigation. It means that a party is not permitted to maintain inconsistent positions in separate judicial proceedings. (*Grant v. Springer* (1928), 330 Ill. 280, 161 N.E. 718; *Trumbull v. Gale* (1921), 222 Ill. App. 113; *Gray v. Fitzhugh* (Wyo. 1978), 576 P.2d 88; *Citizens Bank v. C & H Construction & Paving Co.* (N.M. App. 1976), 89 N.M. 360, 552 P.2d 796, *cert. denied* (1976), 90 N.M. 7, 558 P.2d 619, *modified as to amount of award* (1977), 90 N.M. 208, 561 P.2d 481; *Yarber v. Pennell* (Tex. Civ. App. 1969), 443 S.W.2d 382, *writ ref'd n.r.e*; *Hartley v. Alabama National Bank* (1946), 247 Ala. 651, 25 So. 2d 680; *Selected Risks Insurance Co. v. Kobelinski* (E.D. Pa. 1976), 421 F. Supp. 431.) When a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, he may not thereafter assume a contrary position. (*Garden City Sand Co. v. Christley* (1919), 289 Ill. 617, 124 N.E. 729; *Citizens Bank v. C & H Construction & Paving Co.* (N.M. App. 1976), 89 N.M. 360, 552 P.2d 796, *cert. denied* (1976), 90 N.M. 7, 558 P.2d 619, *modified as to amount of award* (1977), 90 N.M. 208, 561 P.2d 481; *Consolidated Copperstate Lines v. Frasher* (1956), 141 Cal. App. 2d 916, 297 P.2d 692; *Behrens v. Baldenecker* (1956), 76 S.D. 327, 77 N.W.2d 917; *Chicago, S.S.&S.B.R.R. v. Fleming* (7th Cir. 1940), 109 F.2d 419; *Gillespie v. Dunn* (1929), 246 Mich. 415, 224 N.W. 374.) The doctrine of judicial estoppel rests upon public policy which upholds the sanctity of the oath (*Allen v. Neal* (1965), 217 Tenn. 181, 396 S.W.2d 344), and its purpose is to bar as evidence statements and declarations which would be contrary to sworn testimony the party has given in the same or previous judicial proceedings. (*King v. Clodfelter* (1974), 10 Wash. App. 514, 518 P.2d 206.) Having affirmed under oath that a given state of facts exists, a party cannot be permitted to later affirm that the contrary is true. (*Grant v. Springer* (1928), 330 Ill. 280, 161 N.E. 718; *Gray v. Fitzhugh* (Wyo. 1978), 576 P.2d 88; *Coral Drilling, Inc. v. Bishop* (Miss. 1972), 260 So. 2d 463, *cert. denied* (1972), 409 U.S. 1007, 34 L. Ed. 2d 300, 93 S. Ct. 438; *Melton v. Anderson* (1948), 32 Tenn. App. 335, 222 S.W.2d 666, *cert. denied*.) As recently remarked in *Hild v. Avland Development Co.* (1977), 46 Ill. App. 3d 173, 181, 360 N.E.2d 785, 792, *appeal denied* (1977), 66 Ill. 2d 630: "More important to us, however, is our inability to understand how a party to one lawsuit could swear to the untruth of a matter and then become party to another lawsuit and swear to the truth of the same matter. That would create a situation which we are unable to tolerate."

■■ Under the doctrine of judicial estoppel, as applied in Illinois, Finley

having testified under oath that he owned only 31% of the stock and his children owned 40% and having succeeded in convincing the Indiana courts that this 40% belonged to the children and was not marital property, cannot now contend that stock is, in effect, his property. (*Garden City Sand Co. v. Christley* (1919), 289 Ill. 617, 124 N.E.2d 729.) Moreover, as noted by the Illinois trial court, he made no attempt to correct the allegedly mistaken belief of the Indiana courts that 40% of the stock did not belong to Finley in any way and was not marital property. As stated by the Illinois Supreme Court in *Grimm v. Grimm* (1922), 302 Ill. 511, 513, 135 N.E. 19, 20: "If the matter now relied on is true, it was within the knowledge of defendant and he deliberately perpetrated a fraud on the court by concealing it" and is thereby estopped to raise the issue now. We are aware that defendants' motion to dismiss was based on section 48(d) of the Civil Practice Act, which applies to prior judgments, rather than section 48(i), which applies to other affirmative defenses. However the effect of Finley's pleadings and testimony was fully raised below, and the decision of the trial court was based, at least in part, on this evidence.

To conclude, we hold that the full faith and credit requirement of the Federal constitution does not bar the application of the Illinois rules of collateral estoppel and that under those rules, Finley is barred from bringing the present action. We further hold that Finley is barred by the doctrine of judicial estoppel from denying that the children are the beneficial owners of the stock. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

JOHNSON, P. J., and JIGANTI, J., concur.