THE DEPARTMENT OF TRANSPORTATION, Plaintiff-Appellee, *v.* EDWARD P. COE, Defendant-Appellant.—(The Civil Service Commission, Defendant.)

Fourth District   No. 4—82—0352

Opinion filed February 3, 1983.

GREEN, J., dissenting.

S. Craig Smith, of Dillavou, Overaker, Asher & Smith, of Paris, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Edward M. Kay, Assistant Attorney General, of counsel), for appellee.

JUSTICE MILLS delivered the opinion of the court:
Truth is not a weather vane.
It does not veer when the winds of self-interest change.

It remains constant.

A claimant cannot say he is partially permanently disabled for settlement purposes and then claim to have no disability in order to get his former job back.

Coe was dismissed from his position as a highway maintenance equipment operator with the Illinois Department of Transportation (the Department). The Civil Service Commission (the Commission) found that the charges for discharge were not proven by the Department. But the circuit court reversed the Commission's finding and held for the Department.

We affirm.

While working for the Department in December of 1978, Coe slipped on some ice and injured his back. In January, Coe underwent surgery for his injuries. The Department paid all of his medical bills. He remained under doctor's care for over a year and during that time he received weekly compensation from the Department. In March of 1979, Coe's doctor wrote a letter to the Department expressing his opinion that Coe was physically unable to return to his job as an equipment operator. His doctor wrote that Coe was unable to perform the frequent heavy lifting, bending, stooping, and operating heavy machinery which the job required.

Coe then filed a workers' compensation claim against the Department. In May, the Department sent a letter to Coe's doctor, inquiring again whether Coe had suffered any permanent disability. His doctor responded that Coe would not be able to return to his former position; that Coe was 20% permanently disabled; and that Coe could only perform work where there is no constant bending, stooping, heavy lifting, or working with heavy machinery. In December, Coe's doctor wrote the Department and again stated that Coe was entitled to 20% "permanent partial disability to the body as a whole."

In March of 1980, Coe and the Department began to discuss a possible settlement of Coe's workers' compensation claim. During these negotiations, a representative of the Department told Coe that there was no possibility of Coe returning to work with the Department. Coe then entered into a lump sum settlement agreement with the Department. The settlement agreement stated in part that:

> "Respondent [the Department] offers to pay and Petitioner [Coe] agrees to accept the net lump sum of $17,974 representing 20% man as a whole in full, complete and final settlement of all claims arising or to arise from within-described accidents; subject, however, to the approval of the Illinois Industrial Commission."

In June, the settlement agreement was approved by the Industrial Commission.

In July, the Department sent Coe a letter explaining that because he was permanently disabled and unable to perform his job, and since his leave of absence was soon due to expire, he might wish to resign rather than be discharged. Coe responded to the letter by filing a motion to set aside the settlement agreement. After a hearing before the Industrial Commission, the agreement remained in force.

On July 11, Coe appeared at the Department's offices and alleged that he was ready and able to return to work in his former position. A Department representative told him that before he could return to work he would have to obtain a doctor's release.

On July 18, the Department initiated discharge proceedings against Coe. The discharge statement contained two charges: First, that Coe had failed to return from his leave of absence; and, second, that, as a matter of law, Coe was estopped from contending that he was able to perform his job duties.

On July 23, Coe returned to the Department's offices with a doctor's release, but the Department refused to rehire him. Coe was granted a hearing before the Civil Service Commission. The Commission's hearing officer recommended that the Commission find that the charges for discharge were not proven and order Coe reinstated in his job. The hearing officer's recommendation was followed and the Department appealed to the circuit court. The circuit court then reversed the Commission and upheld Coe's discharge, finding that Coe was estopped from alleging before the Commission that he is now capable of performing his job.

We agree.

We hold that Coe is judicially estopped by his representations in the settlement agreement from now arguing before the Civil Service Commission that he is physically able to return to his former position with the Department.

■■ ■ The doctrine of judicial estoppel states that when a party assumes a certain position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding. (*Finley v. Kesling* (1982), 105 Ill. App. 3d 1, 433 N.E.2d 1112.) There are five requirements for application of the doctrine of judicial estoppel. *First*, the two positions must be taken by the same party. *Second*, the positions must be taken in judicial proceedings. *Third*, the positions must be given under oath. *Fourth*, the party taking the positions must have been successful in maintaining the first position, receiving some benefit thereby in the first proceeding. *Fifth*,

the two positions must be totally inconsistent—the truth of one must necessarily preclude the truth of the other. See generally *Garden City Sand Co. v. Christley* (1919), 289 Ill. 617, 124 N.E. 729; *Goldstein v. Scott* (1982), 108 Ill. App. 3d 867, 439 N.E.2d 1039; *Finley*.

■■ Coe has taken two positions in the case at bar. In the settlement agreement approved by the Industrial Commission, he stated that he was 20% permanently disabled. Before the Civil Service Commission, he testified that he was capable of performing his job. These two positions meet all five of the above requirements for application of the doctrine.

First, both positions were taken by the same party—Coe.

■■ ■ Second, although the positions were not taken during judicial proceedings, they were taken during quasi-judicial proceedings before two administrative bodies—the Industrial Commission and the Civil Service Commission. We see no reason to distinguish between the two types of proceedings for the purpose of applying the doctrine. The doctrine of judicial estoppel is an equitable doctrine whose primary purposes are to promote the truth and to prevent parties from deliberately shifting positions to suit the exigencies of the moment. In the case at bar, both the Industrial Commission and the Civil Service Commission were engaged in the resolution of a dispute. Both agencies needed to ascertain the truth of the parties' positions in order to resolve that dispute. The truth is no less important to an administrative body acting in a quasi-judicial capacity than it is to a court of law. *Ergo*, the purposes behind the application of the doctrine are carried out equally by applying the doctrine in both types of proceedings.

■■ Third, the positions must be taken under oath. Although we note that the doctrine of judicial estoppel applies with particular force to positions taken under oath, it would frustrate the purposes behind the doctrine to limit its application to those positions.

The requirement of a formal oath is a technical requirement and one which we decline to follow. Instead, we require that the record clearly reflect that the party intended the trier to accept the truth of the party's position. This requirement carries out the policies supporting the doctrine of judicial estoppel, without unduly restricting the doctrine.

Furthermore, application of the doctrine in administrative proceedings necessitates that the formal oath be eliminated. Administrative agencies today handle an enormous volume of proceedings and not all of those proceedings are conducted under formal oath. Often, disputes that arise in administrative proceedings find their way through administrative review to courts of law. It would be totally il-

logical to allow parties to take one position in an agency proceeding and then allow them to take an inconsistent position in subsequent court proceedings simply because the first position was not taken under formal oath.

The two positions in the present case meet this third requirement. By signing the settlement agreement representing that he was 20% permanently disabled, Coe clearly intended the Industrial Commission to accept the truth of that position in deciding whether to approve the agreement. In the proceedings before the Civil Service Commission, Coe swore to the truth of his second position—that he is 100% capable of performing his job.

Fourth, Coe was successful in maintaining his first position. Based on his representation that he was 20% disabled, the Industrial Commission approved the settlement agreement proposed jointly by Coe and the Department.

And, fifth, the two positions are totally inconsistent. Coe's first position that he is 20% permanently disabled logically means one thing—that he is permanently unable to perform his former job with the Department. That position is diametrically opposed to his second position—that he is now completely and fully capable of performing that same job. Coe cannot claim that he is the same worker that he was before the injury. He has agreed that he is 20% disabled and he has been compensated for that disability. He cannot now alter his position and argue that he is not disabled.

In conclusion, we find that all of the requirements for the application of the doctrine have been met. Therefore, Coe is judicially estopped by his representations in the settlement agreement from arguing before the Civil Service Commission that he is capable of performing his former job with the Department.

Affirmed.

WEBBER, P.J., concurs.

JUSTICE GREEN, dissenting:

I would reverse the judgment of the circuit court and affirm the decision of the Civil Service Commission.

I agree that Coe was estopped before the Civil Service Commission to deny that he was 20% permanently disabled. I disagree with the majority's conclusion that his 20% permanent disability is necessarily equated to an inability on his part to perform the work required in his job. Had he been permanently unable to perform any job, he

would have been 100% permanently disabled. Under the evidence presented, the question of whether Coe could do the work was one of fact for the Civil Service Commission to decide.

Coe's testimony before the Civil Service Commission that he thought he could perform the work did not imply that he had no disability. Although self-serving and subject to impeachment, the testimony was entitled to some weight. The only other evidence concerning Coe's ability in regard to the rigors of the job was the evidence deposition of Dr. Cacdac, Coe's treating physician and surgeon. The weight to be given to Dr. Cacdac's testimony was likewise greatly diminished because of a report which was submitted to the Industrial Commission in which he had recently given a prognosis that Coe would not be able to do the work. Nevertheless, Dr. Cacdac did testify in his evidence deposition that Coe would then be able to do the work. That testimony was also entitled to some weight.

Dr. Cacdac was not asked if the latest opinion was based on an assumption that Coe was not 20% permanently disabled, nor was he asked if a person with a 20% permanent disability could perform the work. Other witnesses testified as to the nature of Coe's job, but none testified as to his present ability to perform the work. As there was no evidence to refute the positive statements of Coe and Dr. Cacdac, the finding of the Civil Service Commission, that Coe could perform the work, was not contrary to the manifest weight of the evidence. That decision should be upheld.