LANCE GROBE, Plaintiff-Appellant, v. HOLLYWOOD CASINO—AURORA, INC., Defendant-Appellee.

Second District   No. 2—00—1268

Opinion filed November 2, 2001.

Kurt A. Niermann, of Presbrey & Associates, of Aurora, for appellant.

Steven B. Belgrade, John A. O'Donnell, Kim Richard Kardas, and Richard P. Girzadas, all of Belgrade & O'Donnell, P.C., of Chicago, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Lance Grobe, appeals from the July 21, 2000, order of the circuit court of Kane County dismissing his cause of action

seeking damages under the Jones Act (46 U.S.C. app. § 688 (1994)). On appeal, the plaintiff argues that the trial court erred in (1) finding that he was not a seaman for purposes of the Jones Act; (2) failing to enforce the stipulation of the parties to allow the Illinois Industrial Commission to determine the applicability of the Jones Act; (3) failing to apply the doctrines of judicial and collateral estoppel; and (4) depriving him of his constitutional right to a remedy under the Illinois Constitution (Ill. Const. 1970., art. I, § 12). We affirm.

## I. Background

The defendant, Hollywood Casino—Aurora, Inc., owns two riverboat casinos named City of Lights I and City of Lights II. The defendant's casinos are located on the Fox River in Aurora. The defendant's casinos are confined to that portion of the Fox River between the Illinois Avenue and New York Avenue bridges, an area .7 miles long. Neither casino can physically pass beneath either bridge. The defendant's casinos are connected to land-based utilities such as electricity, telephone, and computer surveillance hard-lines.

The defendant's casinos are licensed and classified as passenger vessels with the United States Coast Guard. The defendant's casinos are equipped with fire-fighting equipment and safety equipment. They have internal diesel engines for propulsion. The defendant employs a captain and crew who are qualified to move its casinos. Although capable of cruising, the defendant's casinos have not cruised or left their moorings since June 26, 1999, when a change in Illinois law allowed gaming on dockside casinos. See 230 ILCS 10/3(c) (West 2000).

On August 19, 1999, the plaintiff, an engineer for the defendant, allegedly injured himself on the stairs of one of the defendant's casinos during the course of his employment. On February 14, 2000, the plaintiff filed an action in the circuit court of Kane County, seeking remedies under the Jones Act (46 U.S.C. app. § 688 (1994)). On March 20, 2000, the plaintiff filed a separate workers' compensation claim before the Illinois Industrial Commission (Commission).

On July 19, 2000, the Commission held a hearing on the plaintiff's workers' compensation claim to determine whether the plaintiff fell under the provisions of the Workers' Compensation Act (820 ILCS 305/1 (West 1998)). During a pretrial discussion before the Commission's arbitrator, the parties stipulated that the sole issue the arbitrator would initially consider was jurisdiction. On August 1, 2000, the Commission's arbitrator filed a "Decision of the Arbitrator," finding that the plaintiff was a seaman for purposes of the Jones Act and that the plaintiff's exclusive remedy was under that statute. Accordingly, the arbitrator dismissed the plaintiff's workers' compensation claim,

ruling that the Commission lacked jurisdiction to hear an action under the Jones Act. The arbitrator notified the parties of their right to petition the Commission for a review of his decision before it became the Commission's final decision. Both the plaintiff and the defendant have filed petitions for review of the arbitrator's decision.

On June 27, 2000, prior to the arbitrator's decision, the defendant filed a motion to dismiss the plaintiff's Jones Act claim pending in Kane County circuit court. The motion was filed pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2000)). The defendant argued that, in order to be covered by the Jones Act, the plaintiff must serve aboard a vessel "in navigation" and that the defendant's casinos were not "in navigation." On July 6, 2000, the plaintiff filed a countermotion for partial summary judgment asking the trial court to find that the defendant's casinos were vessels "in navigation" under the Jones Act. In their motions, both parties rely on an affidavit from the defendant's director of properties, Jim Hopp. In his affidavit, Jim Hopp stated that the defendant's casinos have not left their moorings since June 26, 1999, and that they have also not transported passengers or cargo since that time. Jim Hopp also stated that he has no plans to navigate the casinos, but he might reposition them sometime in the future, as part of a construction project.

On July 31, 2000, following a hearing, the trial court found that the Jones Act did not apply to the defendant's casinos since they had become land based as of June 26, 1999. Accordingly, the trial court granted the defendant's motion to dismiss and denied the plaintiff's motion for partial summary judgment. Following a denial of his motion to reconsider, the plaintiff filed a timely notice of appeal.

## II. Discussion

On appeal, the plaintiff argues that the trial court erred in granting the motion to dismiss and denying his motion for summary judgment. The plaintiff also argues that the trial court erred in finding that his fall was not within the scope of the Jones Act. Specifically, the plaintiff challenges the trial court's finding that the defendant's casinos were not vessels "in navigation" for purposes of the Jones Act.

■ Prior to discussing the merits, we must first consider the procedural posture of this case. The defendant brought a motion to dismiss the plaintiff's complaint under section 2—615 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—615 (West 2000). A section 2—615 motion challenges the action solely from the face of the pleadings. *Barber-Coleman Co. v. A&K Midwest Insulation Co.*, 236 Ill. App. 3d 1065, 1069 (1992).

■ However, the defendant's motion was not limited to a consider-

ation of the pleadings. The defendant attached affidavits in support of his position and requested the trial court to consider the legal sufficiency of the complaint and, at the same time, make a determination of whether the plaintiff was a seaman. This request is more akin to summary judgment. We note that the supreme court has expressly disapproved of hybrid motions that combine a request for summary judgment and one to dismiss a cause of action. *Janes v. First Federal Savings & Loan Ass'n of Berwyn*, 57 Ill. 2d 398, 405 (1974). Appellate courts generally treat such motions as they were fundamentally decided by the trial court, absent any showing of prejudice to the nonmovant. *Beauvoir v. Rush-Presbyterian-St.Luke's Medical Center*, 137 Ill. App. 3d 294, 299 (1985).

▉ In the instant case, the parties and the trial court treated the defendant's motion to dismiss as if it were a motion for summary judgment. Both parties looked beyond the four corners of the complaint and relied on affidavits. Both parties requested that the trial court make a determination that relied on external evidence. The trial court made such a determination and considered the evidence offered by the parties. On appeal, this court will treat the motion as a motion for summary judgment, absent a showing of prejudice to the plaintiff. See *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 555 (1995).

We do not believe that the plaintiff in the instant case will be prejudiced by the treating of the defendant's motion as a motion for summary judgment. First, we note that the plaintiff did not object to the form of the defendant's motion. Second, we note that the plaintiff brought his own motion for summary judgment. Accordingly, because both parties requested a determination of whether the plaintiff is a seaman, we will treat the motion as one for summary judgment.

▉ Summary judgment is appropriate when the pleadings, depositions, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 2000). If fair-minded people could draw different inferences from the undisputed facts, summary judgment should not be granted. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90 (1992). The disposition of a summary judgment motion is not discretionary, and the standard of review is *de novo*. *Quinton v. Kuffer*, 221 Ill. App. 3d 466, 471 (1991). With these principles in mind, we turn to a consideration of the plaintiff's arguments on appeal.

▉ The general purpose of the Jones Act is to provide heightened legal protection to seamen injured in the course of employment because seaman are exposed to the "peril of the sea." G. Gilmore & C.

Black, Law of Admiralty § 6—21, at 328-29 (2d ed. 1975). To recover from an employer under the Jones Act, the plaintiff must be a seaman. *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 565 (5th Cir. 1995). To qualify as a seaman under the Jones Act, a maritime employee must have a substantial employment related connection to a vessel "in navigation." *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373, 132 L. Ed. 2d 314, 340, 115 S. Ct. 2172, 2192 (1995). Generally, whether a vessel is "in navigation" for purposes of the Jones Act is a question of fact that is normally reserved for the jury. *Chandris*, 515 U.S. at 373, 132 L. Ed. 2d at 340, 115 S. Ct. at 2192. However, removing the issue from the jury's consideration is appropriate where the facts and the law support only one conclusion. *Chandris*, 515 U.S. at 373, 132 L. Ed. 2d at 340, 115 S. Ct. at 2192.

■ Courts consider the following characteristics when determining vessel status: (1) the presence of navigational aids; (2) the presence of lifeboats and other lifesaving equipment; (3) the shape of the bow; (4) the presence of bilge pumps; (5) the presence of crew quarters; and (6) Coast Guard registration. *Gremillion v. Gulf Coast Catering, Co.*, 904 F.2d 290, 293 (5th Cir. 1990). However, for a vessel to be a vessel "in navigation," its purpose must be, to some reasonable degree, the transportation of passengers, cargo, or equipment across navigable waters. *Johnson v. John F. Beasley Construction Co.*, 742 F.2d 1054, 1063 (7th Cir. 1984). Also relevant in determining whether a vessel is "in navigation" is whether the owner intends to move the structure on a regular basis and the length of time the structure has remained stationary. *Gremillion*, 904 F.2d at 293.

The plaintiff contends that the trial court invaded the province of the jury by concluding as a matter of law that the defendant's casinos were not vessels "in navigation" under the Jones Act. The plaintiff argues that there is extensive evidence to conclude that the defendant's casinos are "in navigation." The plaintiff points to the fact that the defendant's casinos continue to be registered and inspected by the Coast Guard and that the defendant employs a captain and crew. In addition, the plaintiff notes the fact that the defendant has construction plans and will be repositioning its casinos sometime in the future. The defendant responds that its casinos are not "in navigation" because they are now permanently moored and have become extensions of the land.

Although no Illinois court has considered the question of whether an indefinitely moored floating casino is a vessel "in navigation," we note that courts in other jurisdictions have concluded that such vessels have been withdrawn from navigation for purposes of the Jones Act. For example, in *Pavone v. Mississippi Amusement Corp.*, 52 F.3d

560 (5th Cir. 1995), the court considered whether a riverboat casino named the Biloxi Bell was a vessel "in navigation" under the Jones Act. Like the casinos in the instant case, the Biloxi Bell was an indefinitely moored, shore-side, floating casino, located on a river. *Pavone*, 52 F.3d at 564. Although the Biloxi Bell had no crew quarters, navigational aids, or lifesaving equipment, it possessed bilge pumps, could be disconnected from its dock with minimal effort and was authorized by the Coast Guard to travel on the United States waterways. *Pavone*, 52 F.3d at 564. The court found that, as a matter of law, the Biloxi Bell was a nonvessel, withdrawn from navigation because it was moored to the shore in a semipermanent or indefinite manner. *Pavone*, 52 F.3d at 570.

Similarly, in *Chase v. Louisiana Riverboat Gaming, Partnership*, 709 So. 2d 904 (La. App. 1998), the court considered the question of whether a permanently moored floating casino is a vessel "in navigation." In *Chase*, the riverboat casino was equipped with navigational aids, safety equipment, bilge pumps, and a propulsion system and was licensed by the Coast Guard. *Chase*, 709 So. 2d at 906. The casino was permanently moored in a containment pond adjacent to the Red River. *Chase*, 709 So. 2d at 906. There was evidence that, at some time in the future, the casino planned to leave its mooring for a hull inspection. *Chase*, 709 So. 2d at 910. Nonetheless, the court found that, as a matter of law, the casino had been withdrawn from navigation because it had been permanently moored, had not left its containment pond to date, and did not transport passengers or cargo. *Chase*, 709 So. 2d at 910.

In addition, the Seventh Circuit has also suggested that permanently moored casinos do not fall under the Jones Act. *Weaver v. Hollywood Casino, Aurora, Inc.*, 255 F.3d 379, 387 (7th Cir. 2001). *Weaver* involved the same defendant as the instant case, but the alleged injury predated the commencement of dockside gaming. *Weaver*, 255 F.3d at 379. The Seventh Circuit remanded the case to the district court to determine whether the portion of the Fox River where the defendant's casinos are located is a navigable waterway for purposes of federal maritime jurisdiction. *Weaver*, 255 F.3d at 382. Before remanding *Weaver*, the court noted that, "if the casino were indefinitely moored (as the record suggests it is now), its status as a vessel in navigation would be doubtful." *Weaver*, 255 F.3d at 387.

■ We are persuaded by the reasoning contained in these authorities and believe that the trial court correctly determined that there were no material issues of fact. The defendant's casinos in the instant case possess all the characteristics of vessel status, not unlike the casino in *Chase*. However, the parties do not dispute that, at the time

of the plaintiff's injury, the defendant's casinos were not transporting passengers, cargo, or equipment, similar to the casinos in both *Chase* and *Pavone*. It is uncontroverted that, at the time of the plaintiff's injury, the defendant had no intention to resume cruising. In fact, at the time of the plaintiff's injury, the defendant's casinos had been permanently withdrawn from navigation for almost two months. As the defendant's casinos were not vessels "in navigation" at the time of the plaintiff's injury, the judgment of dismissal was proper.

The plaintiff, relying on *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373, 132 L. Ed. 2d 314, 340, 115 S. Ct. 2172, 2192 (1995), argues that a vessel does not cease being in navigation simply because it is at anchor, berthed, or dockside. However, we believe that the facts in *Chandris* are not comparable to the facts in the instant case. The vessel in *Chandris* was placed in dry dock for six months to undergo refurbishment and planned to resume cruising after repairs. *Chandris*, 515 U.S. at 351, 132 L. Ed. 2d at 326, 115 S. Ct. at 2181. In reliance on this fact, the United States Supreme Court held that vessels undergoing minor repairs were still vessels "in navigation" and vessels undergoing major overhauls were withdrawn from navigation. *Chandris*, 515 U.S. at 374, 132 L. Ed. 2d at 341, 115 S. Ct. at 2192-93. The Court acknowledged that the distinction of whether a vessel undergoing repairs is "in navigation" or has been withdrawn from navigation is one of degree. *Chandris*, 515 U.S. at 373, 132 L. Ed. 2d at 340, 115 S. Ct. at 2192. Unlike the casino in *Chandris*, the casinos herein were not undergoing any repairs that would temporarily force them to be docked. Rather, the defendant's casinos had been permanently docked when the plaintiff injured himself. We note that the defendant's casinos still remained docked more than a year later, when the plaintiff filed the instant appeal.

We also find that the circumstances presented in this case are unlike those in cases where courts have found riverboat casinos "in navigation." For example, courts have found that a riverboat casino was "in navigation" only where there was evidence that the casino might cruise again. See *Davis v. Missouri Gaming Co.*, No. WD 58768 (Mo. App. W.D. May 15, 2001) (remanding for jury determination the issue of whether an indefinitely moored riverboat casino was "in navigation," because evidence existed that the defendants were dredging the channel to allow the casino to resume cruising); see also *Greer v. Continental Gaming Co.*, 5 S.W.3d 559, 564 (Mo. App. 1999) (finding that a riverboat casino, moored for a four-month period during the winter but scheduled to recommence when water levels rose, was "in navigation"). In the instant case, at the time of the plaintiff's injury, there existed no evidence that the defendant's casinos would ever cruise again.

For all of these reasons, we agree with the trial court's finding that the defendant's casinos were withdrawn from navigation at the time of the plaintiff's injury. Accordingly, the plaintiff is not a seaman for purposes of the Jones Act, and the trial court properly dismissed the complaint.

■ The plaintiff's second argument on appeal is that the trial court erred by failing to enforce the parties' stipulation to resolve the question of jurisdiction before the Commission. Specifically, the plaintiff complains that, because the parties stipulated that this issue would be determined by the Commission, the trial court should not have made an independent determination as to whether the plaintiff fell within the scope of the Jones Act.

Initially, we note that the trial court clearly had both personal jurisdiction over the parties and subject matter jurisdiction over the matters contained in the plaintiff's complaint. The determination by the Commission's arbitrator related solely to the Commission's jurisdiction. In his determination, the Commission's arbitrator made several factual findings and concluded that the plaintiff was covered under the Jones Act. Therefore, the question raised by the plaintiff on appeal is whether the trial court could revisit the arbitrator's legal determination concerning the applicability of the Jones Act.

As to the parties' stipulation, we note that the parties cannot bind a court by stipulating to a question of law or to the legal effect of a factual finding. *Rockford Township Highway Department v. Illinois State Labor Relations Board*, 153 Ill. App. 3d 863, 874 (1987). Absent the application of estoppel or *res judicata* then, the legal question of whether the plaintiff fell under the Jones Act was to be resolved by the trial court. This issue was properly raised by the motion for summary judgment, and the trial court was correct to determine whether the plaintiff was a seaman. We therefore do not believe that the trial court failed to enforce the parties' stipulation.

The plaintiff alternatively argues that the trial court erred in failing to apply judicial estoppel or offensive collateral estoppel to prevent a second hearing on whether the plaintiff's injury falls under the Jones Act. The plaintiff also complains that the defendant has shifted positions by first maintaining that the plaintiff's injury is covered under the Jones Act before the Commission and subsequently reversing its position before the trial court.

■ The doctrine of judicial estoppel provides that, when a party assumes a certain position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding. *People v. Coffin*, 305 Ill. App. 3d 595, 598 (1999). This doctrine has five requirements:

"*First*, the two positions must be taken by the same party. *Second*, the positions must be taken in judicial proceedings. *Third*, the positions must be given under oath. *Fourth*, the party taking the positions must have been successful in maintaining the first position, receiving some benefit thereby in the first proceeding. *Fifth*, *** the truth of one must necessarily preclude the truth of the other." *Department of Transportation v. Coe*, 112 Ill. App. 3d 506, 509-10 (1983).

■ We do not believe that judicial estoppel is applicable in the instant case. Despite the plaintiff's contentions to the contrary, nothing in the record suggests the defendant maintained before the Commission that this plaintiff was covered under the Jones Act. Instead, the record reveals that defendant simply challenged whether the plaintiff's injury "arose out of and in the course of employment."

Moreover, both parties have petitioned the Commission for a review of the arbitrator's decision, and thus the Commission's determination is not final. See *Buroff v. Board of Fire & Police Commissioners*, 248 Ill. App. 3d 626, 629 (1993) (holding an agency decision is not final during the time the agency considers a petition for review). Before a proceeding can have a preclusive effect, the state agency's determination must be final and unappealed. *People v. Melka*, 319 Ill. App. 3d 431, 439 (2000). As the requirements for the application of judicial estoppel have not been satisfied, we do not believe that the trial court erred in failing to apply the doctrine herein.

■ We therefore turn to a consideration of whether the doctrine of collateral estoppel applies to the instant case. Collateral estoppel precludes parties from relitigating material facts that were specifically litigated and determined by a prior action. *Lange v. Coca-Cola Bottling Co. of Chicago, Inc.*, 44 Ill. 2d 73, 75 (1969). The application of offensive collateral estoppel requires a final determination. *Herzog v. Lexington Township*, 167 Ill. 2d 288, 295 (1995). In addition, the parties need not be identical, but the fact or issue decided earlier must be identical to that presented in the subsequent litigation. *Herzog*, 167 Ill. 2d at 295.

■ We do not believe that summary judgment in this case was barred by collateral estoppel. The plaintiff argues that the defendant should be estopped from denying seaman status in the instant case because, in previous proceedings before the Commission, the defendant has maintained that other employees were seamen. However, these prior proceedings before the Commission involved injuries predating the permanently moored status of the defendant's casinos. Although the parties need not be identical for estoppel to apply, the facts surrounding the plaintiff's seaman status in this case are clearly

different from the facts surrounding the seaman status of the employees in the other cases. Additionally, as previously noted, the determination of the Industrial Commission is not yet final, as both parties have appealed the determination. *Buroff*, 248 Ill. App. 3d at 629. Lacking a final judgment from the Commission, the plaintiff's argument to apply collateral estoppel also fails.

The plaintiff's final argument on appeal is that the trial court deprived him of his constitutional right to a remedy in violation of article I, section 12, of the Illinois Constitution. Ill. Const. 1970, art. I, § 12. The plaintiff contends that, since the Commission dismissed his workers' compensation claim, the trial court's dismissal of his claim under the Jones Act has deprived him of a remedy.

■ Article I, section 12, states that "[e]very person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation." Ill. Const. 1970, art. I, § 12. However, this provision is merely an expression of a philosophy and not a mandate that a "certain remedy" be provided in specific form. *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 433 (2000).

■ The plaintiff in the instant case is not without a remedy. The law has provided the plaintiff with several possible remedies, including remedies under the Workers' Compensation Act and possible remedies in tort. Indeed, we note that it is uncontroverted that the plaintiff is currently seeking a remedy under the Workers' Compensation Act and that his claim is currently under review by the Commission. The plaintiff cannot be without a remedy if he has a remedy pending. Therefore, we find that the trial court did not deprive the plaintiff of a remedy in dismissing his Jones Act claim.

For the foregoing reasons, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and CALLUM, JJ., concur.