Jennifer Elaine WATSON Plaintiff

v.

INDIANA GAMING COMPANY,
LP, et al Defendants

No. 2003–24.

United States District Court,
E.D. Kentucky,
at Covington.

Sept. 21, 2004.

Meredith L. Lawrence, Warsaw, KY, for Plaintiff.

Todd M. Powers, Schroeder, Maundrell, Barbiere & Powers, Cincinnati, OH, for Defendant.

## OPINION

BERTELSMAN, District Judge.

This is an admiralty case in which the plaintiff alleges claims for negligence under the Jones Act, for unseaworthiness under general maritime law, and for maintenance and cure under general maritime law.

The plaintiff was a card dealer on a riverboat casino which had previously embarked on short gambling cruises on the Ohio River. Shortly before plaintiff's injury, however, the riverboat was permanently moored to the dock and all future gaming will be conducted dockside. On motion of the defendants, the court concludes that the vessel is no longer "in navigation" and thus the court has no subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 2002, plaintiff was injured while employed as a card dealer aboard the *M/V Argosy VI*, a gambling boat at the Argosy Casino in Lawrenceburg, Indiana. Plaintiff was standing on an emergency flood door waiting for an elevator when a co-worker leaned on a handle that operates the door, causing the door to raise up and knock plaintiff to her knees. Another employee fell on top of plaintiff, and plaintiff was injured.

Prior to August 1, 2002, the *M/V Argosy VI* navigated the Ohio River several times a day on a set schedule to conduct gaming operations in accordance with then-existing Indiana law. However, in June 2002, the Indiana legislature voted to allow casinos to conduct gaming operations "dockside," or permanently moored to the riverbank.

Beginning August 1, 2002, the *M/V Argosy VI* went "dockside" and has been permanently and indefinitely moored at the Argosy dock adjacent to the Argosy Hotel in Lawrenceburg. Since that time, the boat has not been used or intended to be used for moving or transporting people or goods on the water; it has remained stationary and served no transportation function or purpose; and Argosy Casino states it has no intention of moving the *M/V Argosy VI* on a regular basis.

Plaintiff filed this lawsuit on January 29, 2003. On March 29, 2004, this court adopted the Report and Recommendation of Magistrate Judge J. Gregory Wehrman granting and denying in part plaintiff's request for maintenance and cure.[1]

On June 7, 2004, defendants filed a motion for summary judgment on the grounds that plaintiff was not a "seaman" when she was injured because the *M/V*

---

1. Plaintiff's "seaman" status issue was not challenged at that time.

*Argosy VI* was not a vessel "in navigation" as a result of its having been indefinitely moored with no further intent of navigation. This motion has now been fully briefed and argued.

## ANALYSIS

### A. Plaintiff's "Seaman" Status Under The Jones Act

The Jones Act provides that "any seaman" who sustains personal injury in the course of his or her employment may maintain an action for damages at law, with the right to trial by jury. *See* 46 U.S.C.App. § 688.

Although the Jones Act does not define "seaman," the Supreme Court has established a two-prong test for seaman status. In *Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995), the Court held that there are two "essential requirements" for seaman status: (1) the employee's duties must contribute to the function of the vessel or the accomplishment of its mission; and (2) the employee must establish that she has an employment-related "connection to a vessel *in navigation* (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Id.* (emphasis added).

The Supreme Court articulated the purpose underlying the second part of this test:

The fundamental purpose of this substantial connection requirement is to give full effect to the remedial scheme created by Congress and to separate the sea-based maritime employees who are entitled to Jones Act protection from those land-based workers who have only a transitory or sporadic connection to a vessel in navigation and therefore whose employment does not regularly expose them to the perils of the sea.

*Id.* The Court reiterated that the "Jones Act remedy is reserved for sea-based maritime employees whose work regularly exposes them to 'the special hazards and disadvantages to which they who go down to sea in ships are subjected.'" *Id.* at 370, 115 S.Ct. 2172 (quoting *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 104, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) (Stone, C.J., dissenting)).

In *Chandris*, the Court also held that the navigation issue is normally one of fact, reserved for the jury. *Id.* at 373, 115 S.Ct. 2172. However, the Court stated that it is appropriate to remove the issue from the jury "where the facts and the law will reasonably support only one conclusion." *Id. See also McDermott Int'l v. Wilander*, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991) (noting, with respect to the issue of seaman status under the Jones Act, that "summary judgment or a directed verdict is mandated where the facts and the law will reasonably support only one conclusion") (citation omitted).

The Sixth Circuit has not addressed the issue of whether a riverboat casino which is indefinitely moored to the dock is "in navigation" for purposes of the Jones Act. However, the Seventh and Fifth Circuits have done so within the last year, both concluding that such riverboats are not vessels "in navigation."

In *Martin v. Boyd Gaming Corp.*, 374 F.3d 375 (5th Cir.2004), the Fifth Circuit considered a Jones Act claim brought by a woman who worked as a cocktail waitress on a riverboat casino in Louisiana. From 1994 to March 31, 2001, the riverboat conducted gaming cruises in accordance with Louisiana law. *Id.* at 376. During its 2001 session, however, the Louisiana legislature abolished the cruise requirement for all riverboat casinos, effective April 1, 2001. *Id.* From that date, the riverboat conducted gaming only while moored, and the boat was moved from its mooring on only two occasions to allow for maintenance dredging of her berth. *Id.*

The Fifth Circuit affirmed the district court's grant of summary judgment to the casino, reasoning:

> The rule has never been "once a vessel, always a vessel." ... [O]nce the TREASURE CHEST was withdrawn from navigation so that transporting passengers, cargo or equipment on navigable water was no longer an important part of the business in which the craft was engaged, the craft was not a vessel.... Applying these principles to the summary judgment evidence in this case, it is clear the TREASURE CHEST had no transportation function in the performance of its function as a gambling casino. After April 1, 2001, the TREASURE CHEST was securely moored during all gaming activity conducted by her customers.

*Id.* at 377 (citations omitted).

Similarly, in *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854, 857 (7th Cir.2004), *petition for cert. filed,* July 8, 2004, the Seventh Circuit held that an indefinitely-moored dockside riverboat casino was not a vessel "in navigation" under the Jones Act. The court noted that the riverboat could be disconnected from the dock, that it was licensed by the U.S. Coast Guard, and that it also employed a captain and crew qualified to move the boat if necessary. *Id.* at 856. Nonetheless, because it was undisputed that the purpose of the riverboat was not to transport cargo or people, but "merely to provide a legal venue under Illinois law for gambling," the court held that the indefinitely-moored riverboat was not a vessel "in navigation" as a matter of law. *Id.* at 857.

The *Howard* court noted, citing the Supreme Court's opinion in *Chandris,* that its holding was consistent with the Jones Act's purpose of protecting seamen "regularly" exposed to the "perils of the sea." *Id.*

At least two federal district courts and one state court have reached the same conclusion. *See Ward v. Boyd Gaming Corp.,* No. 04–0060, 2004 WL 422012, at *2–3 (E.D.La. Mar.4, 2004); *Hertz v. Treasure Chest Casino, L.L.C.,* 274 F.Supp.2d 795, 800–01 (E.D.La.2003); *Grobe v. Hollywood Casino–Aurora, Inc.,* 325 Ill.App.3d 710, 259 Ill.Dec. 674, 759 N.E.2d 154, 160–61 (2001).

The relevant undisputed facts of this case are virtually indistinguishable from those of *Martin* and *Howard.* Pursuant to a change in Indiana gaming law, the *M/V Argosy VI* has been indefinitely moored to the dock in Lawrenceburg since August 1, 2002. It no longer transports either people or cargo. Instead, the vessel is now used solely as a venue for legal gambling.

While plaintiff argues that the affidavit of Argosy's manager, who states that the casino has no intention of moving the riverboat on a regular basis in the future, is "suspect," plaintiff presents no evidence to cast doubt on her testimony. There is no evidence, for example, that the casino has taken any steps to prepare the riverboat to resume navigation or to perform any transportation functions. Moreover, this type of affidavit testimony is the same as that relied on by the Seventh Circuit in *Howard* as evidence regarding the current and intended use of the riverboat. *See Howard,* 364 F.3d at 855.

In sum, plaintiff's opposition boils down to her argument that the issue of "seaman" status is always a factual question for the jury.[2] However, as the

---

**2.** The court finds unpersuasive plaintiff's additional arguments regarding the law of the case and estoppel. Magistrate Judge Wehr-

man never considered the "seaman" status question because defendants did not challenge it at that juncture. Moreover, the law

Supreme Court made clear in *Chandris* and *Wilander*, that is not always the case. Where the facts are undisputed, the court can and should resolve the "seaman" question as a matter of law. Because there are no disputed facts here, summary judgment is appropriate.

■ Therefore, because the *M/V Argosy VI* has been indefinitely moored and is no longer used, nor intended to be used, for any river transportation function, it is not a "vessel in navigation" for purposes of the Jones Act. Plaintiff thus does not meet the criteria for "seaman" status under this statute.

## B. *General Maritime Law*

■ The Supreme Court has held that a party seeking to invoke federal admiralty jurisdiction over a tort claim must satisfy conditions both of location and of connection with maritime activity. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). The "locality" prong requires that the alleged tort must have occurred on navigable water. *Id.*

■ As to the second "connection" factor, the Court has established a two-part inquiry. First, the court must assess the general features of the type of incident involved to determine whether the incident has a potentially disruptive impact on maritime commerce. *Id.* (citing *Sisson v. Ruby*, 497 U.S. 358, 363–64, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990)).

Next, the court must examine the general conduct from which the incident arose to determine whether there is a "substantial relationship" between the activity giving rise to the incident and traditional maritime activity. *Id.* "If the tort produces no

potential threat to maritime commerce or occurs during activity lacking a substantial relationship to traditional maritime activity, *Sisson* assumes that the objectives of admiralty jurisdiction probably do not require its exercise, even if the location test is satisfied." *Id.* at 545, 115 S.Ct. 1043.

Based on these principles, federal courts have held that tort claims by injured employees of indefinitely-moored dockside riverboat casinos do not have a substantial relationship to traditional maritime activity so as to fall within the courts' admiralty and maritime jurisdiction. *See Martin v. Boyd Gaming Corp.*, 374 F.3d 375, 377 n. 1 (5th Cir.2004); *Ward v. Boyd Gaming Corp.*, No. 04–0060, 2004 WL 422012, at *6 (E.D.La. Mar.4, 2004); *Hertz v. Treasure Chest Casino, L.L.C.*, 274 F.Supp.2d 795, 806–07 (E.D.La.2003); *King v. President Riverboat Casino–Mississippi, Inc.*, 894 F.Supp. 1008, 1013 (S.D.Miss.1995).

In *Ward*, the court explained:

Clearly, an accident aboard a vessel no longer engaging in maritime commerce injuring a laborer no longer contributing to the marine economy does not even potentially disrupt maritime commerce. Ward's connection with maritime commerce is too attenuated to invoke admiralty jurisdiction under *Executive Jet* and its progeny. Thus, although plaintiff has satisfied the locus aspect of the "locality plus" admiralty jurisdiction determination, Ward has failed to meet the nexus requirement. Consequently, this matter is not within the admiralty jurisdiction of the general maritime law and must be dismissed.

*Ward*, 2004 WL 422012, at *6.

The same reasoning applies here. At the time plaintiff was injured, the *M/V*

---

of the case doctrine is discretionary. *See In re Kenneth Allen Knight Trust,* 303 F.3d 671, 677 (6th Cir.2002). Here, the question of plaintiff's seaman status goes to whether this

court even has subject matter jurisdiction over her claims, and thus the issue is one that can be raised at any time. *See* Fed.R.Civ.P. 12(h)(3).

*Argosy VI* had been withdrawn from navigation and no longer served any maritime purpose. The "general conduct" from which her injury arose was her employment as a card dealer in a casino. The injury thus bears no relationship to traditional maritime activity so as to fall within this court's admiralty jurisdiction.