No. 2--05--0516          filed: 1/26/06
_____

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

_____

| | | |
|---|---|---|
| LISA BOELKES, | ) | Appeal from the Circuit Court |
| | ) | of Winnebago County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 04--AR--1380 |
| | ) | |
| HARLEM CONSOLIDATED SCHOOL | ) | |
| DISTRICT No. 122, | ) | Honorable |
| | ) | Timothy R. Gill, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

_____

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Lisa Boelkes, was hired as a school teacher by defendant, Harlem

Consolidated School District No. 122, for the 2002-03 academic year.   Plaintiff's

employment contract provided that she would work 181 days and receive a base salary of

$47,811.40 (after subtracting contributions to the Teachers' Retirement System).  Plaintiff

opted to receive her salary in 26 installments, which equates to $1,838.90 per paycheck.

Just four days after the academic year began, plaintiff sustained a work-related injury,

which resulted in her missing 74 days of work.  As a result of her injury, plaintiff sought

compensation pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 et seq.

(West 2002)).  Thereafter, the parties executed a "Settlement Contract Lump Sum Petition

and Order," which the Illinois Industrial Commission approved on February 14, 2003. The settlement contract included an award of temporary total disability (TTD) benefits based on an average weekly wage of $919.45. Although the settlement contract does not indicate how plaintiff's average weekly wage was calculated, we note that $919.45 represents plaintiff's base salary divided by 52 (the number of weeks in the calendar year).

Plaintiff returned to work on December 17, 2002. Upon her return, defendant was paid $1,511.59 for each of the pay periods remaining in the academic year. Plaintiff's post-injury salary was determined as follows. Defendant divided plaintiff's base salary by 181 (the number of workdays listed in her contract), to arrive at a per diem wage of $264.16. The per diem rate was multiplied by 103 days (the number of work days remaining in the academic year), yielding $27,208.48. Defendant divided this figure by 18 (the number of pay periods remaining after plaintiff's return to work), to arrive at $1,511.59.[1]

On November 11, 2004, plaintiff brought suit against defendant. As amended, plaintiff's two- count complaint alleged causes of action for breach of contract and a violation of section 4(h) of the Act (820 ILCS 305/4(h) (West 2002)). Relevant here,

---

[1] Although our calculations yield slightly different numbers, the parties do not complain that the calculations as set forth above are inaccurate.

plaintiff's breach-of-contract count alleged that when plaintiff returned to work following her leave, defendant unilaterally reduced her rate of pay. On February 2, 2005, defendant filed a motion to dismiss plaintiff's amended complaint, pursuant to section 2--619 of the Code of Civil Procedure (735 ILCS 5/2--619 (West 2004)). In its motion, defendant argued that plaintiff's claim is barred by the Act's exclusivity provisions (820 ILCS 305/5(a), 11 (West 2002)). Defendant also argued that there is no factual basis for plaintiff's claim. Notably, defendant argued that plaintiff's contract contemplated that her pay would be based on a per diem rate. Plaintiff filed a memorandum in opposition to defendant's motion, arguing, among other things, that defendant was collaterally, judicially, and equitably estopped from using a per diem rate to calculate her salary. Defendant responded that plaintiff failed to satisfy the elements of estoppel. On May 5, 2005, the trial court granted defendant's motion and dismissed plaintiff's complaint with prejudice. The court did not issue a written memorandum of decision. This appeal ensued.

Plaintiff argues that the trial court erred in granting defendant's motion to dismiss her complaint. Plaintiff contends that defendant's method of calculating her wages after she returned to work was inconsistent with the method used to calculate her wages for determining TTD benefits in the workers' compensation proceeding. In particular, plaintiff points out that in the workers' compensation proceeding, her average weekly wage was determined by dividing her base salary by the number of weeks in the calendar year. When plaintiff returned to work following her injury, however, defendant used a per diem rate to calculate her salary. Plaintiff speculates that different methods were used to minimize the amount defendant was required to pay her. Plaintiff reiterates on appeal that defendant is precluded by the doctrines of collateral estoppel, judicial estoppel, and equitable estoppel

from using a <u>per diem</u> rate of pay to calculate her post-injury salary.  Plaintiff maintains that, in calculating her post-injury salary, defendant is bound by the method used to calculate her wages in the workers' compensation proceeding.

As stated above, the trial court granted defendant's section 2--619 motion to dismiss. The principal purpose of section 2--619 is to afford a means of obtaining summary disposition of issues of law or easily proven issues of fact early in the litigation process. <u>Milz v. M.J. Meadows, Inc.</u>, 234 Ill. App. 3d 281, 286 (1992).  Because the facts in this case are uncontroverted, we review <u>de novo</u> the trial court's order granting the section 2--619 motion to dismiss.   <u>LaSalle Bank National Ass'n v. Village of Bull Valley</u>, 355 Ill. App. 3d 629, 635 (2005);  <u>A.F.P. Enterprises, Inc. v. Crescent Pork, Inc.</u>, 243 Ill. App. 3d 905, 912 (1993) (noting that when the trial court resolves questions of fact in ruling on a section 2--619 motion, it is the duty of the appellate court to review the law and the facts; a trial court's order may be reversed if the court erred in its application of the law or made a factual determination that was against the manifest weight of the evidence).  We note further that the question of estoppel depends on the facts of each case and that the party claiming estoppel has the burden of proving by clear and convincing evidence that it applies. <u>Geddes v. Mill Creek Country Club, Inc.</u>, 196 Ill. 2d 302, 314 (2001).

Plaintiff first argues that defendant is precluded by the doctrine of collateral estoppel from basing her post-injury salary on a <u>per diem</u> rate of pay.  The doctrine of collateral estoppel precludes parties from relitigating an issue that has been fairly and completely resolved in a previous proceeding.  <u>LaSalle Bank</u>, 355 Ill. App. 3d at 635.  For collateral estoppel to apply, the party invoking the doctrine must establish that: (1) the issue decided in the prior litigation was identical to the one presented in the suit in question; (2) there was

a final judgment on the merits in the prior action; (3) the party against whom estoppel is asserted was a party to the prior action or in privity with such a party; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action. LaSalle Bank, 355 Ill. App. 3d at 635-36.

The Act is the exclusive remedy for an injured worker to recover damages from his or her employer. 820 ILCS 305/5(a) (West 2002). The underlying purpose of the Act is to provide financial protection to workers who sustain accidental injuries arising out of their employment. Jacobs v. Industrial Comm'n, 269 Ill. App. 3d 444, 447 (1995). To this end, the Act contains a comprehensive scheme to compensate employees for impaired earning capacity resulting from work-related injuries. Zion-Benton Township High School District 126 v. Industrial Comm'n, 242 Ill. App. 3d 109, 115-16 (1993). Section 8(b) of the Act (820 ILCS 305/8(b) (West 2002)) provides that the compensation rate for TTD benefits shall be equal to 66⅔% of the employee's average weekly wage computed in accordance with section 10 of the Act (820 ILCS 305/10 (West 2002)). Section 10 of the Act provides four methods by which to determine an employee's average weekly wage. 820 ILCS 305/10 (West 2002); Sylvester v. Industrial Comm'n, 197 Ill. 2d 225, 230 (2001). Thus, in order to calculate plaintiff's TTD benefits, plaintiff's average weekly wage had to be determined by one of the methods set forth in the Act.

One way to establish an employee's average weekly wage is by taking the "actual earnings of the employee in the employment in which [s]he was working at the time of the injury during the period of 52 weeks ending with the last day of the employee's last full pay period immediately preceding the date of injury, illness or disablement excluding overtime, and bonus divided by 52." 820 ILCS 305/10 (West 2002). It appears from the settlement

agreement that this was the method used to calculate plaintiff's average weekly wage for determining TTD benefits.[2] In other words, the significance of establishing plaintiff's average weekly wage in the workers' compensation proceeding was to calculate TTD benefits for her work-related injury.

The Act, however, does not govern plaintiff's rate of pay under her employment contract. Thus, the fact that the settlement contract sets forth plaintiff's average weekly wage for determining workers' compensation benefits has no relevance in establishing plaintiff's salary under her employment contract. Plaintiff claims that, because she elected pursuant to her contract to be paid in 26 biweekly installments, her employment contract never contemplated a per diem rate of pay. We disagree. Contract interpretation is a question of law. Downs v. Steel & Craft Builders, Inc., 358 Ill. App. 3d 201, 205 (2005). Plaintiff's employment contract provides the option of receiving her salary in 22 or 26

---

[2] Plaintiff seems to suggest in her brief that the method used to calculate her average weekly wage was not the proper method. However, this issue is not properly before us.

installments. However, this provision merely governs the frequency with which an employee will be paid, not how the employee's salary is calculated. More importantly, the employment contract specifically provides that the length of the contract is 181 days. The reference to "days" rather than some other time period supports defendant's claim that plaintiff is compensated on a per diem basis. Further, the collective bargaining agreement between defendant and its teachers' union buttresses the proposition that teachers are paid on a per diem basis. The collective bargaining agreement provides that the work year will last 181 days, that "[t]he daily rate of pay shall be 1/181 of the individual staff member's annual salary," that anyone who works more than 181 days will be compensated at "his/her per diem rate of pay," and that docked pay shall be based on 1/181 of the teacher's salary.

In short, we conclude that the issue in the workers' compensation proceeding and the issue in the breach-of-contract claim are not identical. The workers' compensation proceeding involved the establishment of plaintiff's average weekly wage for the purpose of determining benefits for a work-related injury arising out of her employment. The Act provides statutorily mandated methods to establish an employee's average weekly wage for that purpose.[3] In contrast, the breach-of-contract action involved a determination of

---

[3] Indeed, courts in other jurisdictions have held that an employee's average weekly wage may vary depending on the type of workers' compensation benefit conferred. See, e.g., Reidelberger v. Hussman Refrigerator Co., 135 S.W.3d 431 (Mo. App. 2004) (holding that collateral estoppel did not preclude the claimant from seeking permanent total disability (PTD) based on a greater average weekly wage than previously agreed to in stipulation setting the claimant's TTD and permanent partial disability; issue decided in earlier proceeding was not identical to issue presented in proceeding to determine PTD); McKean

plaintiff's wages under her employment contract.  Because plaintiff has failed to persuade us that the issue decided in the workers' compensation proceeding was identical to the issue presented in the breach-of-contract count of her amended complaint, we conclude that the record does not support the application of collateral estoppel to this case.

We also conclude that the doctrine of judicial estoppel does not preclude defendant from asserting a <u>per diem</u> rate of pay in the breach-of-contract claim.  The doctrine of judicial estoppel serves to prevent a party from asserting inconsistent positions in separate proceedings to receive a  favorable judgment in each.  <u>Gray v. National Restoration Systems, Inc.</u>, 354 Ill. App. 3d  345, 356 (2004).  The doctrine provides that when a party assumes a certain position in a legal proceeding, that party is estopped from assuming a contrary position in a subsequent legal proceeding.  <u>Grobe v. Hollywood Casino-Aurora, Inc.</u>, 325 Ill. App. 3d 710, 719 (2001).  For the doctrine to apply: (1) the party must have taken two positions; (2) the positions must have been taken in separate judicial or quasijudicial administrative proceedings; (3) the party must have intended the trier of fact to

---

<u>v. Municipality of Anchorage</u>, 783 P.2d 1169 (Alaska 1989) (noting that although the Alaska workers' compensation statute provides the same formula for determining average weekly wage for those with temporary or permanent disabilities, the actual figures to be used in establishing the average weekly wage may differ).

accept the truth of the facts alleged in support of the positions; (4) the party must have succeeded in asserting the first position and received some benefit from it; and (5) the two positions must be inconsistent. Gray, 354 Ill. App. 3d at 356; Grobe, 325 Ill. App. 3d at 720, quoting Department of Transportation v. Coe, 112 Ill. App. 3d 506, 509-10 (1983).

In this case, defendant did not take two inconsistent positions. Defendant did not assert that in establishing plaintiff's TTD benefits, her compensation should be determined by reference to her average weekly wage. Rather, this result was dictated by the Act. 820 ILCS 305/8, 10 (West 2002). Accordingly, we conclude that the record does not support the application of judicial estoppel to this case.

Finally, plaintiff argues that defendant should be equitably estopped from asserting a per diem rate of pay in the breach-of-contract action. We disagree. Equitable estoppel exists where a party, by his or her own statements or conduct, induces a second party to rely, to his or her detriment, on the statements or conduct of the first party. In re Marriage of Smith, 347 Ill. App. 3d 395, 399 (2004). To establish equitable estoppel, the party claiming the estoppel must demonstrate that: (1) the other party misrepresented or concealed material facts; (2) the other party knew at the time he or she made the representations that they were untrue; (3) the party claiming the estoppel did not know that the representations were untrue when they were made and when they were acted upon; (4) the other party intended or reasonably expected that the party claiming estoppel would act upon the representations; (5) the party claiming estoppel reasonably relied upon the representations in good faith, to his or her detriment; and (6) the party claiming estoppel would be prejudiced by his or her reliance on the representations if the other party is permitted to deny the truth thereof. Geddes, 196 Ill. 2d at 313-14.

In this case, plaintiff has failed to establish the first element of equitable estoppel. Plaintiff argues that the first element of equitable estoppel has been established because "the contrary positions taken by Defendant Harlem School District in the Workers' Compensation proceeding and this Breach of Contract proceeding cannot both be correct." However, conspicuously absent from this conclusory statement is any allegation that defendant misrepresented or concealed any material facts. As a result, we conclude that the record does not support the application of equitable estoppel to this case.

For the reasons set forth above, we affirm the order of the circuit court of Winnebago County dismissing plaintiff's complaint with prejudice.

Affirmed.

McLAREN and HUTCHINSON, JJ., concur.