NOTICE

Decision filed 04/18/06. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

CONS. NO. 5-04-0423

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| ANGELA L. BOOTEN and CRAIG L. WILLEFORD, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) Nos. 02-L-677 & 03-L-689 |
| | ) |
| ARGOSY GAMING COMPANY, d/b/a<br>ALTON BELLE CASINO, | )<br>) Honorable |
| | ) Phillip J. Kardis, |
| Defendant-Appellee. | ) Judge, presiding. |

_____

JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiffs, Angela L. Booten and Craig L. Willeford, employees of defendant, Argosy Gaming Company, doing business as the Alton Belle Casino, appeal from orders of the circuit court of Madison County granting a summary judgment in favor of defendant. Booten was employed as a housekeeper on board defendant's gambling boat, the M/V Alton Belle II (Alton Belle). Willeford was employed as a slot attendant on the Alton Belle. They were injured in separate accidents while performing their respective jobs for defendant. Plaintiffs filed separate cases under the Jones Act (46 U.S.C. App. §688 (2000)) and the maritime doctrine of unseaworthiness. Defendant moved for a summary judgment in both cases on the issue of seaman status under the Jones Act. The summary judgment motions were heard by the same judge on the same day. The trial court granted a summary judgment in favor of defendant in both cases. The cases were consolidated on appeal.

The facts surrounding each particular accident and the issues of liability and damages are not relevant here. Rather, our focus is on whether the Alton Belle is a "vessel in

1

navigation" pursuant to the Jones Act. Plaintiffs contend the trial court erred in granting summary judgments in favor of defendant because there was a genuine issue of material fact regarding whether the Alton Belle was a "vessel in navigation" pursuant to the Jones Act. We reverse and remand.

FACTS

Initially, the Alton Belle operated as a gambling boat that took excursions on the Mississippi River pursuant to the Riverboat Gambling Act (Act) (Ill. Rev. Stat. 1991, ch. 120, par. 2402 *et seq.*). Under the original Act, gambling could only be conducted on licensed "self-propelled excursion boats" during a "gambling excursion." Ill. Rev. Stat. 1991, ch. 120, pars. 2404(d), (e). The Act required excursion boats to leave their docks and cruise on "navigable streams" in order for gambling to be allowed. Ill. Rev. Stat. 1991, ch. 120, pars. 2403(c), 2411(a)(1).

The Act was amended, effective June 25, 1999, to allow gambling on a "permanently moored barge", as well as a "self-propelled excursion boat." 230 ILCS 10/4(d) (West Supp. 1999). Accordingly, riverboat gambling in Illinois can now be conducted on a boat, regardless of whether or not the boat takes an excursion. 230 ILCS 10/3(c) (West Supp. 1999). On June 26, 1999, the 1,500-passenger Alton Belle discontinued cruising. According to Dennis Crank, defendant's facility manager, there are no plans for the Alton Belle to resume cruising.

In addition to the 1,500-passenger boat known as the Alton Belle, the present gambling complex consists of a fun barge, the Spirit of America barge, the employee barge, and the patio barge. All five components of the complex float and rise and fall with the level of the river. The boat itself is moored to a dock and is connected to land-based utilities, including electric, telephone, water, and sewer. Before the boat can leave the dock, the utility lines must be disconnected, five boarding ramps must be raised, and cables that hold

2

the boat to the dock must be disconnected. These procedures take approximately 15 minutes; however, Dennis Crank testified that in the case of an emergency, it would only take the crew approximately 5 to 7 minutes to disconnect the mooring cables.

Since June 1999, the Alton Belle has left its mooring for dedrifting approximately five times per year. During this process the boat is spun two or three times to dislodge any accumulated drift materials. The boat then returns to its mooring. Despite no longer cruising, the vessel always has fuel on board and remains fully capable of navigating the river. Defendant has never applied for permanent mooring status.

The Alton Belle is required to comply with all Coast Guard regulations for a passenger vessel. For example, the Coast Guard requires lifesaving equipment to be on board, so that even today the Alton Belle is equipped with 1,500 life jackets, 6 ring buoys, and 6 inflatable rafts. The Alton Belle is inspected every 90 days by the Coast Guard to ensure compliance with regulations. When customers are on board, a full marine crew must also be on board. The Alton Belle employs a senior captain, 3 captains, 4 engineers, 4 mates, and 21 deck hands. The Alton Belle remains a licensed passenger vessel.

Plaintiffs' complaints were premised on the Jones Act. Defendant filed motions for a summary judgment on the basis that the Alton Belle was not a "vessel in navigation" and that, therefore, neither plaintiff was a seaman, thus barring plaintiffs' claims under the Act. The trial court agreed and entered summary judgments in defendant's favor. Each plaintiff filed a timely notice of appeal, and the cases have been consolidated in this appeal. We reverse and remand.

## ANALYSIS

Plaintiffs first argue the trial court erred in granting summary judgments in favor of defendant because a genuine issue of material fact exists regarding whether the Alton Belle was a "vessel in navigation" for purposes of the Jones Act. According to plaintiffs,

3

defendant's subjective intent not to navigate the Alton Belle in the future is a factor but, without more, merely creates a genuine issue of material fact regarding whether the boat is, in fact, permanently moored, thereby precluding the entry of a summary judgment. In a supplemental brief, plaintiffs argue that recent decisions indicate that the Alton Belle is a "vessel in navigation" as a matter of law. Defendant replies that the trial court did not err in granting summary judgments in its favor because an indefinitely moored casino such as the Alton Belle is not a vessel in navigation for purposes of the Jones Act.

The Jones Act provides that "[a]ny seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law" under the Federal Employers' Liability Act (45 U.S.C. §51 *et seq.* (2000)). 46 U.S.C. App. §688(a) (2000). In order for the Jones Act to apply, the structure on which the worker is working must qualify as a "vessel in navigation." *Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 88, 116 L. Ed. 2d 405, 415, 112 S. Ct. 486, 492 (1991). Given the highly fact-intensive inquiry necessary to determine a structure's status, the question of whether a structure constitutes a vessel in navigation for purposes of the Jones Act is normally reserved for the jury. It is only appropriate to remove the issue from the jury if there is no genuine issue of material fact and the law supports only one conclusion. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 373, 132 L. Ed. 2d 314, 340, 115 S. Ct. 2172, 2192 (1995).

The Jones Act does not define the word "vessel," but numerous cases have considered the question of what constitutes a vessel. Defendant relies on *Howard v. Southern Illinois Riverboat Casino Cruises, Inc.*, 364 F.3d 854 (7th Cir. 2004), which held that the permanently and indefinitely moored dockside casino in issue was not a vessel in navigation for purposes of the Jones Act because it had no transportation function or purpose. In that case, the district court determined the casino was, in fact, permanently moored based upon statements made by defendant's agent that it intended to permanently moor the casino. The

4

Seventh Circuit accepted the district court's finding that the vessel was permanently moored, and the court applied federal summary judgment standards to conclude that despite the vessel's residual capacity for transportation, the vessel was no longer "in navigation" as a matter of law. *Howard*, 364 F.3d at 858. Other courts have also found that floating riverboat casinos are not "vessels" under maritime law. See, *e.g.*, *Martin v. Boyd Gaming Corp.*, 374 F.3d 375, 377 (5th Cir. 2004); *Hertz v. Treasure Chest Casino, L.L.C.*, 274 F. Supp. 2d 795, 807 (E.D. La. 2003); *Grobe v. Hollywood Casino–Aurora, Inc.*, 325 Ill. App. 3d 710, 759 N.E.2d 154 (2001).

We point out, however, that in reaching its conclusion, the *Howard* court discounted the weight of the actions by the defendant which were contrary to its determination. For example, the defendant in *Howard* never relinquished its certificate of inspection from the Coast Guard, nor did it ever apply for permanent mooring status. The Seventh Circuit relied on the self-serving statement by the defendant's agent that it did not intend to cruise the vessel. Moreover, cases decided after *Howard* and the other cases cited above lead us to question whether the Seventh Circuit's holding in *Howard* remains valid.

For example, in the recent case of *Stewart v. Dutra Construction Co.*, 543 U.S. 481, 160 L. Ed. 2d 932, 125 S. Ct. 1118 (2005), the Supreme Court considered whether a harbor dredge is a vessel and concluded that it is. *Stewart*, 543 U.S. at 484, 160 L. Ed. 2d at 939, 125 S. Ct. at 1121. The *Stewart* Court stated that in order to qualify as a vessel, a ship must be " 'used, or capable of being used, as a means of transportation on water.' 18 Stat., pt. 1, p. 1." *Stewart*, 543 U.S. at 489, 160 L. Ed. 2d at 942, 125 S. Ct. at 1124. The *Stewart* Court recognized that "structures may lose their character as vessels if they have been withdrawn from the water for extended periods of time" (*Stewart*, 543 U.S. at 496, 160 L. Ed. 2d at 947, 125 S. Ct. at 1128) and that "a watercraft is not 'capable of being used' for maritime transport in any meaningful sense if it has been permanently moored or otherwise rendered practically

5

incapable of transportation or movement" (*Stewart*, 543 U.S. at 494, 160 L. Ed. 2d at 945, 125 S. Ct. at 1127), but the Court also stated that a ship does not move in and out of "vessel" status because it is temporarily "at anchor, docked ***, or berthed for minor repairs." *Stewart*, 543 U.S. at 494, 160 L. Ed. 2d 945, 125 S. Ct. at 1127. Thus, the Supreme Court specifically declined to adopt any test for vessel status that focuses on either a craft's "primary purpose" or whether the craft is in "actual transit" at the time of an accident. *Stewart*, 543 U.S. at 495, 160 L. Ed. 2d at 946, 125 S. Ct. at 1127-28. Instead, under *Stewart*, if at the time of the accident a watercraft's use as a means of transportation remains a "practical possibility," rather than "merely a theoretical one," it is a "vessel in navigation." *Stewart*, 543 U.S. at 496, 160 L. Ed. 2d at 947, 125 S. Ct. at 1128.

The dredge at issue in *Stewart* was described as "a massive floating platform from which a clamshell bucket is suspended beneath the water" to remove silt from the ocean floor. *Stewart*, 543 U.S. at 484, 160 L. Ed. 2d at 939, 125 S. Ct. at 1121. The Supreme Court stated: "[The dredge] was not only 'capable of being used' to transport equipment and workers over water–it *was* used to transport those things. Indeed, it could not have dug the Ted Williams Tunnel had it been unable to traverse the Boston Harbor ***." (Emphasis in original.) *Stewart*, 543 U.S. at 495, 160 L. Ed. 2d at 946, 125 S. Ct. at 1128. The *Stewart* Court pointed out "the seeming incongruity of grouping dredges alongside more traditional seafaring vessels under the maritime statutes." *Stewart*, 543 U.S. at 497, 160 L. Ed. 2d at 948, 125 S. Ct. at 1129. Nevertheless, quoting from a Fourth Circuit case more than 100 years old, the Supreme Court observed that although it might be a " 'stretch of the imagination to class the deck hands of a mud dredge in the quiet waters of a Potomac creek with the bold and skillful mariners who breast the angry waves of the Atlantic[,] *** such and so far-reaching are the principles which underlie the jurisdiction of the courts of admiralty that they adapt themselves to all the new kinds of property and new sets of

6

operatives and new conditions which are brought into existence in the progress of the world.' " *Stewart*, 543 U.S. at 497, 160 L. Ed. 2d at 948, 125 S. Ct. at 1129 (quoting *Saylor v. Taylor*, 77 F. 476, 479 (4th Cir. 1896)). *Stewart* is broad and holds that if a ship meets the requirements of jurisdiction, it is a "vessel in navigation" for purposes of the Jones Act.

Relying on *Stewart*, the Eighth Circuit recently determined that a cleaning barge which was originally built for navigation but was later moored to the bed of the Missouri River by spud poles, which are long steel or wood posts placed vertically through the hull of a vessel and embedded into the bed of a waterway to anchor the vessel, was a "vessel" within the meaning of the Jones Act. *Bunch v. Canton Marine Towing Co.*, 419 F.3d 868 (8th Cir. 2005). The *Bunch* court reasoned that "[a]lthough the cleaning barge was secured in position, strong currents would shift the barge, belying the permanency of its mooring," and that the evidence failed to establish that "the barge had been taken out of service or rendered practically incapable of maritime transportation." *Bunch*, 419 F.3d at 873.

We are aware that the *Stewart* Court cited with approval *Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560 (5th Cir. 1995) (*Stewart*, 543 U.S. at 494, 160 L. Ed. 2d at 945-46, 125 S. Ct. at 1127), which held that a floating casino was not a vessel within the meaning of the Jones Act because it was moored to the shore in a semipermanent or indefinite manner. The casino in *Pavone*, however, is in no way similar to the casino in the instant case. In *Pavone*, the floating casino, the Biloxi Belle, was never used as a seagoing vessel to transport passengers, cargo, or equipment. It lacked a motor and had to be towed to its mooring position, where it was originally used as a restaurant and bar until its conversion to a casino. It was not a vessel because it had "no engine, no captain, no navigational aids, no crewquarters[,] and no lifesaving equipment." *Pavone*, 52 F.3d at 564.

Here, the Alton Belle's ability to cruise is more than a theoretical possibility. It remains a practical possibility, and the Alton Belle actually navigates the river. First, the

Alton Belle is required to comply with all Coast Guard regulations pertaining to a passenger vessel and is inspected every 90 days to ensure compliance. Second, the Alton Belle maintains a full maritime crew and is equipped with a motor, fuel, and everything necessary to navigate the Mississippi River on which it is moored. Third, it can be disconnected from its mooring cables within 7 to 15 minutes, depending upon whether there is an urgent need to free the Alton Belle from its mooring. Dennis Crank testified that defendant maintains the quick-disconnect policy in order to be able to get out of harm's way in case of an emergency. Finally, the Alton Belle actually navigates the Mississippi River approximately five times per year when it is released from its mooring and spun around to remove accumulated drift materials.

According to *Stewart*, the term "vessel" refers to "any watercraft practically capable of maritime transportation, regardless of its primary purpose or state of transit at a particular moment." *Stewart*, 543 U.S. at 497, 160 L. Ed. 2d at 947, 125 S. Ct. at 1129. Under the Supreme Court's analysis set forth in *Stewart*, we fail to see how reasonable minds could disagree on whether the Alton Belle is a vessel in navigation for purposes of the Jones Act. The record before us shows that the Alton Belle remains fully capable of maritime transportation. The fact that Dennis Crank testified that the Alton Belle stopped cruising on June 26, 1999, the day after the law changed to allow gambling to occur on either permanently moored barges or self-propelled excursion boats, and has no plans to resume cruising does not alter our finding.

The Alton Belle is clearly capable of maritime transportation as evidenced by its dedrifting expeditions and Dennis Crank's testimony that the Alton Belle can be ready to cruise in approximately five to seven minutes if an emergency situation should arise. Relying on *Stewart*, we find that the Alton Belle is a "vessel in navigation" for purposes of the Jones Act, thereby making plaintiffs seamen. Accordingly, the trial court erred in ruling

8

as a matter of law that the Alton Belle was not a vessel in navigation and in entering summary judgments in favor of defendant.

## CONCLUSION

For the foregoing reasons, the judgments of the circuit court of Madison County are hereby reversed, and the causes are remanded for further proceedings consistent with this opinion.


Reversed; causes remanded.


SPOMER, P.J., and CHAPMAN, J., concur.

NO. 5-04-0423

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | |
|---|---|
| ANGELA L. BOOTEN and CRAIG L. WILLEFORD, | ) Appeal from the<br>) Circuit Court of<br>) Madison County. |
| Plaintiffs-Appellants, | ) |
| | ) |
| v. | ) Nos. 02-L-677 & 03-L-689 |
| | ) |
| ARGOSY GAMING COMPANY, d/b/a<br>ALTON BELLE CASINO, | )<br>) Honorable |
| | ) Phillip J. Kardis, |
| Defendant-Appellee. | ) Judge, presiding. |

**Opinion Filed**: April 18, 2006

**Justices**: Honorable Richard P. Goldenhersh, J.,

Honorable Stephen L. Spomer, P.J., and
Honorable Melissa A. Chapman, J.,
Concur

**Attorneys for Appellants**  Gail G. Renshaw, Craig J. Jensen, Roy C. Dripps, The Lakin Law Firm, P.C., 300 Evans Avenue, P. O. Box 229, Wood River, IL 62905

**Attorneys for Appellee**  Gordon R. Broom, Gregg A. Kinney, Jarrod P. Beasley, Burroughs, Hepler, Broom, MacDonald, Hebrank & True, LLP, 103 West Vandalia Street, Suite 300, P.O. Box 510, Edwardsville, IL 62025